**John DOE, Plaintiff,**

v.

**CITY OF CLEVELAND, et al., Defendant.**

**No. C86–696.**

United States District Court, N.D. Ohio, E.D.

June 28, 1991.

Dale Andrew Baich, Ohio Public Defender Com'n, Columbus, Ohio, for John Doe.

Barbara R. Marburger, City of Cleveland, Dept. of Law, Cleveland, Ohio, for City of Cleveland, William Hanton, Marvin Wynn, Daniel Zaller and Myrna Porter.

Paul M. Herdeg, Legal Aid Soc. of Cleveland, Cleveland, Ohio, for Karen Weiss.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

John Doe brings this action alleging a deprivation of constitutionally protected rights and defamation against the City of Cleveland, Chief of Police Hanton, Officer Zaller, Officer Porter and Officer Weiss.[1] Doe alleges that his fourth amendment right to be free from unreasonable seizure, his fourteenth amendment right to privacy and his fourteenth amendment right to due process have all been violated. He also brings a state law claim for defamation. Jurisdiction is based on 28 U.S.C. § 1331.

The defendants have moved for summary judgment on all of the claims, and Doe has moved for partial summary judgment on his claim of defamation. For the reasons stated, Doe's motion for summary judgment is denied, and defendants' motion for summary judgment is granted.

### I.

On October 17, 1985, Doe and Marvin Wynn spent the evening together at clubs and arrived at their apartment complex[2] at about 4:30 a.m. on October 18. An altercation began. Wynn received a stab wound and the Cleveland Police were summoned.

---

1. The second amended complaint also brought suit against then Mayor Voinovich, the Cleveland City Council, Safety Director Reginald Turner, and Marvin Wynn. Doe has voluntarily dismissed those defendants.

2. Wynn and Doe had separate apartments but in the same complex.

Officers Zaller and Porter arrived at the scene.

The officers saw that Wynn was bleeding from his thigh. Wynn stated that Doe had stabbed him. He told the officers where Doe lived and also told them that Doe was a homosexual and that he had AIDS. The officers found Doe and Wynn identified him as his assailant. The officers then arrested Doe for felonious assault and took him to the Sixth Police District Headquarters.

At headquarters, Doe was booked by Officer Weiss. Booking involves taking personal property from a prisoner, as well as searching, fingerprinting and obtaining information from him. Zaller and Porter told Weiss that Wynn had stated that Doe had AIDS. Weiss conveyed that information to the officer in charge and also typed "Suspected AIDS" on Doe's booking card.

Officers Zaller, Porter, and Weiss believed that their action in reporting this information was not only lawful, but also required by departmental policy. All three officers knew that police records were to be kept confidential. · Zaller and Porter then went to the hospital to interview Wynn. At this time Wynn recanted his accusation and stated that he had stabbed himself. Doe was then transferred to the Central Prison Unit. The booking card, which has been maintained since that time at the Central Prison Unit, has the entry "AIDS—2-10".

Detective Minor, who was assigned to the case, also attempted to contact and interview Wynn to obtain a signed statement which could form the basis for criminal charges. After several attempts, Minor was unable to contact Wynn. Doe was then released at 9:30 a.m. on October 19, 1985. No charges were ever brought against him, nor was he ever brought before a judge. Doe spent about 27 hours in custody.

During the time in question, Doe was employed at a McDonald's restaurant. On October 21, 1985, while he was at work, his manager called him into the office. An assistant was also present. The manager showed Doe a document which had a hand-written notation of "AIDS—2-10" on it, and told Doe that because he was suspected of having AIDS, he was being terminated from his employment. On this paper, the following note was also written:

> Even though AIDS cannot be transmitted by contact it is unfortunate that he is associated with McDonald's. I feel the person in charge should know in case it can help you in any way. Please; [sic] and I trust you will keep this information confidential.

Doe was not reinstated by McDonald's until January 1986.

Porter, Zaller, and Weiss state that they never saw the "AIDS—2-10" booking card until after the lawsuit was filed. All deny either sending the booking card to McDonald's or knowing who did. Doe did not authorize the release of the information on his booking card. At the time of the incident, he did not have AIDS, nor does he now.

The Cleveland Police Department have the following rules concerning the disclosure of arrestees' private information. Departmental Rule 5.22, in effect on October 1985, stated:

> Treat as confidential all business, orders, and reports of the Division of Police, and all information imparted to them as personnel of the Division; and reveal them to no one for whom they are not intended.

General Police Order 34–70 provides:

> Arrest records of this Department may not be given to any other agency, business firm or person unless expressly requested by affidavit by an individual who wishes to release information concerning himself to a third party. This affidavit will be the only exception to the rule ...

The General Police Order governing booking, G.P.O. 52–79, required that the following be included on the booking card:

> #16 *Mental & Physical Condition*— Record any injuries or illnesses....
>
> #18. *Special Medical Needs*—Note if inmate is taking any medication and if it is a prescribed drug.

On September 6, 1985, the police department promulgated G.P.O. 21–85 "Arrest of Persons with Acquired Immune Deficiency Syndrome." The order provided:

> [T]he following interim procedure shall be adhered to by all personnel who become exposed to persons suspected of, or found to be suffering from ... AIDS.
>
> Any individual who is arrested and detained in a jail facility ... is to be isolated in the detention area ... In all cases, the City of Cleveland Health Department shall be notified as soon as practicable ... of the prisoner's suspected condition.
>
> If a suspected AIDS victim is transferred to the custody of another agency, the agency shall be notified of that fact at the time of transfer.
>
> In addition, the officer responsible for the arrest shall ensure that the prosecutor and judge assigned to the case are notified of the defendant's condition.

## II.

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law ...

■ The nature of materials properly presented in a summary judgment pleading is set forth in Federal Rule of Civil Procedure 56(e):

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein ... The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits. When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the ad-

verse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

However, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In reviewing summary judgment motions, this Court must view the evidence in the light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Hasan v. CleveTrust Realty Investors*, 729 F.2d 372 (6th Cir. 1984). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil trials the Court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252, 106 S.Ct. at 2512. Although "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient to defeat a summary judgment motion, the court is not precluded from denying a summary judgment motion where it concludes that proceeding to trial is a better course. *Id.* at 252, 254, 106 S.Ct. at 2512, 2513.

## III.

■ Doe alleges that his right to be free from unreasonable seizure as guaranteed by the fourth amendment was violated by Hanton, Zaller, Porter, and Weiss, while

acting pursuant to a policy of the City of Cleveland. His claim is based on the fact that he was held for approximately 27 hours without ever being brought before a neutral judicial officer for a probable cause hearing.

Under the fourth amendment, an individual detained following a warrantless arrest is entitled to a "prompt" judicial determination of probable cause as a prerequisite to any further restraint on his liberty. *Gerstein v. Pugh*, 420 U.S. 103, 114–16, 95 S.Ct. 854, 863–64, 43 L.Ed.2d 54 (1975). In *County of Riverside v. McLaughlin,* — U.S. ——, 111 S.Ct. 1661, 1670, 114 L.Ed.2d 49 (1991), the Supreme Court held that "a jurisdiction that provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of *Gerstein.*" Since the Cleveland police released Doe within 48 hours of arrest, they have not violated his fourth amendment rights.

## IV.

■ The two remaining constitutional claims involve the publication to McDonald's of the allegation that Doe was suspected of having AIDS. Doe alleges that this publication deprived him of his liberty and of his privacy in violation of the fourteenth amendment to the Constitution. Doe brings these claims against the individual defendants in their official capacities. These are essentially suits against the "entity of which an officer is an agent." *Monell v. New York Department of Social Services*, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2036 n. 55, 56 L.Ed.2d 611 (1978).

In *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), the Supreme Court unraveled the distinctions between personal capacity and official capacity suits. An official capacity suit should be treated as a suit against the entity. *Id.* at 166, 105 S.Ct. at 3105. Therefore, in an official-capacity suit, the entity itself must be a moving force behind the constitutional deprivation. *Id.* (cita-

tions omitted). The entity's policy or custom must have played a part in the deprivation. *Id.* In an official capacity suit, the defense of qualified immunity is not available.[3]

To prevail in this suit, then, Doe must show that an official, acting under color of state law, caused the deprivation of a federal right and that a city policy was the moving force behind this deprivation. *Id.* at 166, 105 S.Ct. at 3105.

### A. *Doe's liberty interest*

■ Doe argues that the disclosure to McDonald's that he was suspected of having AIDS deprived him of liberty without due process of law. The Court finds the Supreme Court's reasoning in *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) dispositive of this claim. In *Paul* the police chief, Paul, decided to alert local merchants to possible shoplifters who might be operating during the Christmas season. *Id.* at 694–95, 96 S.Ct. at 1157. Paul distributed a flyer to local merchants which identified "active shoplifters" and included the name and photograph of Davis. *Id.* at 695, 96 S.Ct. at 1158. At the time the flyer was circulated, Davis had been arrested and charged with shoplifting but had not been convicted. The charges were subsequently dropped. *Id.* at 696, 96 S.Ct. at 1158. Davis's employer learned of this and threatened Davis with termination. *Id.* Davis then sued alleging a deprivation of liberty.

The Court declined to find that Davis had been deprived of a liberty interest. The Court stated as follows:

It is apparent from our decision that there exists a variety of interests which are difficult of definition but are nevertheless comprehended within the meaning of either "liberty" or "property" as meant in the Due Process Clause. These interests attain this constitutional status by virtue of the fact that they have been initially recognized and protected by state law, and we have repeatedly ruled that the procedural guarantees of the

---

3. The parties have spent a considerable amount of time briefing the issue of qualified immunity. This Court need not determine that issue be-

cause the suit has not been brought against the defendants in their personal capacities.

Fourteenth Amendment apply whenever the State seeks to remove or significantly alter that protected status.... But the interest in reputation alone which the respondent seeks to vindicate in this action in federal court is quite different from the "liberty" or "property" recognized in those decisions. Kentucky law does not extend to respondent any legal guarantee of present enjoyment of reputation which has been altered as a result of petitioners' action. Rather his interest in reputation is simply one of a number which the State may protect against injury by virtue of its tort law, providing a forum for vindication of those interests by means of damages actions. And any harm or injury to that interest, even where as here inflicted by an officer of the State, does not result in a deprivation of any "liberty" ... recognized by state or federal law ...

*Id.* at 710–12, 96 S.Ct. at 1165–66.

Doe must establish the deprivation of some liberty interest. To determine whether such a liberty interest exists, he must look to state law. Doe has failed to come forward with any basis from which this Court could find that his injury is sufficiently different from that in *Paul*, such that it would be appropriate to find a deprivation of liberty.

Accordingly, this Court finds that summary judgment is appropriate for all defendants as to any alleged deprivation of liberty.

*B. Doe's Privacy Interest*

■ The Constitution protects two types of privacy interests: (1) the right to avoid disclosing matters of a personal nature; and (2) the right to independence in making certain types of important, personal decisions. *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir.1987) (citing *Whalen v. Roe*, 429 U.S. 589, 599–600, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977)). Doe's claim involves the disclosure of private information.

■ The Sixth Circuit has only infrequently addressed the right to privacy as it relates to information. In *J.P. v. DeSanti*,

653 F.2d 1080 (1981), the Sixth Circuit addressed the disclosure of juveniles' social history reports. When a juvenile was brought into court, a social history report was prepared which, after the initial court proceedings were terminated, was available to fifty-five government, social, and religious agencies that were members of a social services clearinghouse. *Id.* at 1085. The Sixth Circuit declined to find that such disclosure violated any constitutional right to privacy. The court reviewed the decision of *Whalen v. Roe*, and *Nixon v. Administrator of General Services*, 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977) and noted that their discussion of a privacy interest in nondisclosure of personal information "clouded" the issue. *DeSanti*, 653 F.2d at 1088–89. However, the court stated

[a]bsent a clear indication from the Supreme Court, we will not construe isolated statements in *Whalen* and *Nixon* more broadly than their context allows to recognize a general constitutional right to have disclosure of private information measured against the need for disclosure.

*Id.*

The Court concluded that the constitution does not encompass a general right to non-disclosure of private information. However, the court agreed that non-disclosure of personal information would be appropriate where it could be deemed "fundamental" or "implicit in the concept of ordered liberty." *Id.* at 1090.

The Sixth Circuit next addressed the issue in *In re Zuniga*, 714 F.2d 632 (1983), *cert. denied*, 464 U.S. 983, 104 S.Ct. 426, 78 L.Ed.2d 361 (1983). A grand jury had issued subpoenas to psychiatrists seeking the identity of patients, the dates on which they were treated, and the length of treatment on each date. *Id.* at 640. The court was willing to assume that a constitutional right encompassed the patients' interests in prohibiting disclosure of the personal information sought by the grand jury. *Id.* at 641. The court weighed the slight intrusion to the patients' interests [4] with the government's interest and found that dis-

---

4. The intrusion was viewed as slight based on the secrecy surrounding grand jury proceedings.

closure did not violate the patients' constitutional rights. *Id.* at 642.

Last, in *Gutierrez,* the court found that the requirement that a city employee, a police officer, turn over medical records to the city did not violate his right to privacy. There was no discussion in *Gutierrez* of whether disclosure by the city to third persons would violate the officer's privacy interests.

Recently, in *Doe v. Borough of Barrington,* 729 F.Supp. 376 (D.N.J.1990), a court found that disclosure by the police of the fact that the defendant actually had AIDS, violated his family members' right to privacy. The court found both the individual officers and the city liable.

In *Barrington,* Doe's husband was arrested and taken to the police station for booking. As a pat down search was being performed, Doe's husband told the officers "the he had tested HIV positive and that the officers should be careful in searching him because he had 'weeping lesions.'" *Id.* at 378. On the same day, due to another incident, police were required to come to Doe's house and also to meet with Doe's neighbors. One of the police officers disclosed to the neighbors that Doe's husband had AIDS. *Id.* at 378. These neighbors then contacted other parents whose children attended the same school as Doe's children. Many of these parents removed their children from the school. The media covered this event and Doe's real name was used in at least one media broadcast. *Id.* The Does then sued alleging a violation of their right to privacy.

In finding that the constitution protected the Does from disclosure of this private information, the district court relied on the Supreme Court's decision in *Whalen v. Roe.* The court read this decision as suggesting that disclosure by the state of private information may violate the fourteenth amendment of the Constitution. The court also relied on two lower court decisions, *Carter v. Broadlawns Medical Center,* 667 F.Supp. 1269, 1282 (S.D.Iowa 1987) (holding that policy of public hospital of permitting chaplains to review patients medical records violated right of privacy),

*aff'd in part,* 857 F.2d 448 (8th Cir.1988), *cert. denied,* 489 U.S. 1096, 109 S.Ct. 1569, 103 L.Ed.2d 935 (1989); *Woods v. White,* 689 F.Supp. 874, 876 (W.D.Wis.1988) (holding that disclosure of an inmates AIDS condition to nonmedical prison personnel and other inmates violates the right to privacy in personal information), *aff'd,* 899 F.2d 17 (7th Cir.1990); *see also, Scheetz v. Morning Call,* 747 F.Supp. 1515 (E.D.Pa. 1990) (§ 1983 claim permitted for release by police of highly personal information).

The courts which found a violation of the right to privacy engaged in a balancing test between the government's need for disclosure and the individual's need for privacy. This Court is persuaded that the Constitution does indeed protect private persons from disclosure of certain information and that *DeSanti* is easily distinguishable from this case. First, the Supreme Court in *Nixon* explicitly assumed the existence of a right to privacy in non-disclosure of personal information. *DeSanti* involved disclosure of the information to other governmental type agencies for the use and conduct in their social services mission. It did not involve the indiscriminate disclosure to private parties who had no legitimate basis for receiving the information. Also, in *DeSanti,* the facts failed to show any actual disclosure of information of a highly personal nature. In addition, in *DeSanti,* the court was unwilling to hold that there was no constitutional right to privacy in non-disclosure. *Id.* at 1090. Last, in both *Gutierrez* and *Zuniga* the court assumed that there was indeed such a right.

While not all information would be protected by the constitution from disclosure, this Court believes that information relating to AIDS—like information relating to psychiatric treatment—is of a fundamental enough nature to be protected. Thus, this Court finds that Doe had a privacy interest in non-disclosure of this private information. Clearly, there was no legitimate governmental interest to be served by disclosure of the information to McDonald's.

*C. City policy or custom*

In order to hold a city or municipality liable under § 1983, the plaintiff must dem-

onstrate that the constitutional deprivation was the result of the implementation of an unconstitutional city policy or that the city failed to properly train the officers and such failure "reflects the deliberate indifference to the constitutional rights of its inhabitants." *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 1202, 1206, 103 L.Ed.2d 412 (1989). It is not sufficient to show that a city employee happened to apply a policy in an unconstitutional manner. *Id.,* 109 S.Ct. at 1203.

■ Doe argues that the City policy regarding AIDS suspects is vague because it does not adequately define an AIDS suspect; it fails to give any guidelines for determining who is an AIDS suspect; and it fails to define how notification should be made.

This Court does not agree that the policies, set forth in full in part I, are unconstitutional on their face. Doe's claim rests on the theory that disclosure of information to his employer regarding AIDS violated his privacy and liberty interest. The policy directed specifically towards AIDS, along with the general policies, prohibit disclosure of booking information to nonauthorized persons. These display sufficient awareness of the need for confidentiality. The AIDS policy directs disclosure only to certain persons who are delineated in the order. This Court cannot find that policies which require confidentiality are unconstitutional.

Doe also argues that Cleveland failed to provide adequate training to its officers regarding the arrest of persons with AIDS. In *Harris,* the Supreme Court addressed the proper standard for bringing a claim against a city based on its alleged failure to train. The plaintiff must show that there was "a deliberate choice to follow a course of action." *Id.* at 1205. The failure to train must be a deliberate or conscious choice by a municipality. *Id.*

■ First, this Court finds that Doe mischaracterizes the issue. Whether the officers understood the intricacies of dealing with someone who has AIDS is irrelevant. The issue really is whether the officers were adequately trained so that they un-derstood the need for confidentiality of booking records. There is nothing in this record which would demonstrate that Cleveland had a policy of deliberately failing to train its officers with respect to the confidentiality of records. This Court may not infer the existence of a policy from the isolated misconduct of a single, low-level officer. *Oklahoma City v. Tuttle,* 471 U.S. 808, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985).

Additionally, all the officers involved have stated that they were trained in, and knew of, the policy regarding confidentiality of records. The incident here is the result of one officer's malicious circumvention of Cleveland's policy. It does not represent a policy or choice on behalf of the City of Cleveland.

Accordingly, as to Doe's claim that he was deprived of his right to privacy, this Court finds that summary judgment is appropriate as to all defendants.

## V.

Doe's defamation claim must also be dismissed for lack of subject matter jurisdiction. Jurisdiction in this case is based on the existence of a federal question. This Court has jurisdiction over Doe's state law claim only because it is pendent to his federal causes of action. *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). "[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Id.* at 726, 86 S.Ct. at 1139. Accordingly, this Court, in its discretion, orders Doe's pendent state law claim for defamation dismissed, without prejudice, for lack of a substantial federal question.

## VI.

In conclusion, the defendants' motion for summary judgment on Doe's federal claims is granted, and judgment is entered for the defendants. Doe's state law claim for def-

amation is dismissed, without prejudice, for lack of subject matter jurisdiction.

IT IS SO ORDERED.