Jane DOE, Plaintiff,

v.

TOWN OF PLYMOUTH and Paul
A. Tibbetts, Defendants.

Civ. A. No. 91–13007–H.

United States District Court,
D. Massachusetts.

July 2, 1993.

Denise McWilliams, Office of Aids Service, Boston, MA, for plaintiff.

David C. Jenkins, Gallagher & Gallagher, Boston, MA, for defendant Town of Plymouth.

James G. Haddad, Reardon & Reardon, Worcester, MA, for Paul A. Tibbetts.

ORDER RE:

## MOTION OF THE DEFENDANTS, PAUL TIBBETTS AND TOWN OF PLYMOUTH FOR SUMMARY JUDGMENT

### (DOCKET ENTRY # 29)

BOWLER, United States Magistrate Judge.

The above styled civil rights action is referred to the undersigned for trial pursuant to 28 U.S.C. § 636(c). (Docket Entry # 27). Pending before this court is a motion for summary judgment (Docket Entry # 29) filed by defendants Paul Tibbetts ("Tibbetts") and the Town of Plymouth ("the town") (collectively: "defendants"). Plaintiff Jane Doe ("plaintiff") opposes the motion. (Docket Entry # 33).

On June 2, 1993, this court held a hearing and took the motion for summary judgment (Docket Entry # 29) under advisement.

### BACKGROUND

Plaintiff, who resides in an apartment in Plymouth, Massachusetts, filed this civil rights complaint on November 20, 1991. She brings the following five counts for relief: (1) violation of 42 U.S.C. §§ 1983 and 1988 against Tibbetts for the alleged violation of plaintiff's right to privacy (count I); (2) violation of Massachusetts General Laws chapter 214, section 1B ("chapter 214"), against Tibbetts for wantonly and/or recklessly disre-

garding plaintiff's right to privacy (count II); (3) violation of Massachusetts General Laws chapter 12, section 11I ("chapter 12"), against Tibbetts for violation of plaintiff's right to privacy (count III); (4) intentional infliction of emotional distress against Tibbetts (count IV); and (5) violation of Massachusetts General Laws chapter 258 ("chapter 258") against the town for its alleged failure to adequately train and supervise Tibbetts in the protection of privacy rights of individuals with AIDS (count V). (Docket Entry # 1).

On February 16, 1993, defendants filed a motion for summary judgment, asserting various arguments in favor of dismissing this action on the merits. (Docket Entry # 29). For purposes of summary judgment, this court finds the following facts.[1]

On or about November 20, 1988, plaintiff was in her apartment with her sister. Plaintiff's upstairs neighbor, Anita Magnificio ("Magnificio") and her daughter, entered plaintiff's apartment with Magnificio "chanting about evil things." According to plaintiff, Magnificio deposited the contents of her pocketbook on the coffee table in plaintiff's apartment where plaintiff's medication, AZT, was located in a bottle.[2] (Docket Entry # 33, Ex. 1).

Tibbetts and "Officer Abbott" ("Abbott") arrived at plaintiff's apartment at approximately 2:00 p.m. and removed Magnificio. Plaintiff, Tibbetts and Abbott agreed to leave Magnificio's daughter in plaintiff's care and custody until a relative could be located. (Docket Entry # 30, Ex. 1; Docket Entry # 33, Ex. 1).

Tibbetts transported Magnificio initially to the Plymouth police station and thereafter to Jordan Hospital. At Jordan Hospital, Tibbetts reviewed the contents of Magnificio's purse. Therein, he discovered a container of prescription medication, retrovir,[3] bearing plaintiff's name. Tibbetts read the label aloud. A doctor standing a few feet from Tibbetts told Tibbetts that the medication

was used for AIDS, according to Tibbetts. Tibbetts then spoke with a number of nurses at the hospital about plaintiff's medication. One or more of the nurses told Tibbetts that, for health reasons, it would be wise to remove Magnificio's daughter from plaintiff's care. (Docket Entry # 30, Ex. 1; Docket Entry # 33, Ex. 2).

Approximately one hour after leaving plaintiff's apartment, Tibbetts telephoned plaintiff at her apartment. (Docket Entry # 33, Ex. 1 & 2). According to plaintiff's version of the conversation, Tibbetts told her that "they" had found a bottle of plaintiff's prescription medication in Magnificio's purse. He asked plaintiff to confirm that the medication belonged to her. When plaintiff refused to explicitly identify the medication, Tibbetts told plaintiff that he knew what the medication was. Although plaintiff initially stated that she took the medication for a blood disease, she eventually identified the medication as AZT and as belonging to her. (Docket Entry # 33, Ex. 1).

Tibbetts then asked plaintiff if she was "HIV positive." Believing that she would not get her medication if she did not answer Tibbetts' questions, plaintiff stated "yes." Tibbetts then advised plaintiff that "they" would remove Magnificio's daughter from her care because of her illness. He also informed plaintiff that her medication would be returned, according to plaintiff. (Docket Entry # 33, Ex. 1).

According to Tibbetts' version of the conversation, he described the medication to plaintiff and told her that the bottle had her name on it. Tibbetts further testified that plaintiff then replied that it was her medication. Tibbetts also asked plaintiff what she used the medication for and plaintiff initially replied for blood pressure. Tibbetts then told plaintiff that a doctor had informed him about the nature of the medication. Plaintiff then told Tibbetts she was HIV positive and asked him to keep the informa-

---

1. This court includes the allegedly hearsay statement of Anita Magnificio in this section of this Order and discusses the admissibility of this statement in the discussion section *infra*.

2. Plaintiff is infected with the human immunodeficiency virus ("HIV") and, according to her unverified complaint, suffers from the Acquired Immune Deficiency Syndrome ("AIDS").

3. Retrovir is the prescription name for AZT.

tion confidential. Tibbetts told plaintiff that no one would know about her situation. (Docket Entry # 33, Ex. 2). The information is not contained in the incident report. (Docket Entry # 30, Ex. 2).

After speaking on the telephone with plaintiff, Tibbetts spoke with Abbott at the hospital. Tibbetts told Abbott to return the medication to plaintiff and to remove Magnificio's daughter from plaintiff's care. (Docket Entry # 33, Ex. 2). Abbott returned plaintiff's medication to plaintiff approximately one hour after plaintiff's telephone conversation with Tibbetts. (Docket Entry # 33, Ex. 1).

On February 1, 1989, Bosari and Magnificio were involved in an altercation, according to plaintiff who witnessed the event. (Docket Entry # 33, Ex. 1). Tibbetts responded to a dispatch call that Bosari was experiencing difficulty with a neighbor and arrived at Bosari's apartment. (Docket Entry # 30, Ex. 1). Bosari advised Tibbetts that Magnificio's daughter was acting irrationally and had thrown a stone at Bosari's automobile.[4] Tibbetts counseled Bosari to insulate herself and her children from these neighbors, according to Tibbetts. Tibbetts does not recall telling Bosari that plaintiff was a "sad case." In fact, he recollects not telling Bosari about plaintiff's illness. (Docket Entry # 30, Ex. 1). Bosari testified that she did not recall discussing plaintiff's health status "with him," presumably Tibbetts. (Docket Entry # 30, Ex. 4).

The following day, Magnificio told plaintiff that she had received a telephone call from Lynn Quintell ("Quintell") saying that Bosari had told Quintell that plaintiff had AIDS and that Tibbetts had told Bosari the day before that plaintiff was a "sad case," had an illness and that children should be kept away from plaintiff's home.[5] (Docket Entry # 33, Ex. 1).

Plaintiff states she was upset. She testified that she spoke with Bosari the same day and repeated what Magnificio had told her.

According to plaintiff, Bosari confirmed that the conversation between Bosari and Tibbetts had occurred. Although Bosari did not identify the particular words used during the conversation, she generally adopted the conversation as described to her by plaintiff,[6] according to plaintiff.

Bosari testified that one night plaintiff came to her door and related something "an [o]fficer had told me. And I said, I'm sorry, an [o]fficer did not tell me." Also according to Bosari, plaintiff told her she had AIDS and Bosari assured plaintiff that "it would never get beyond us." (Docket Entry # 30, Ex. 4). As previously noted, Tibbetts does not recall telling Bosari about plaintiff's illness at his deposition. (Docket Entry # 30, Ex. 1).

Approximately one week thereafter, plaintiff spoke with Quintell. Prior thereto, Quintell's daughter told plaintiff that, "My mother says you have AIDS and my mother says you're going to die." After February 1989, plaintiff testified that none of the children in the neighborhood played with her daughter. Sometime after the February 1989 incident, plaintiff moved from her apartment because of the "stress" resulting from "people knowing [she] had AIDS." (Docket Entry # 33, Ex. 1).

Tibbetts began working for the police department of the Town Plymouth ("Plymouth police department") in 1978. He currently occupies the rank of patrolman. He graduated from the Barnstable Police Academy and received training throughout his tenure as a member of the Plymouth police department. He testified that he received annual, 40 hour courses concerning recent developments in the law. He received "some training" in HIV disease. Specifically, one time during his annual 40 hour training course, Tibbetts testified that:

HIV disease was described to us in a class as to manners in which it could possibly be transmitted and manners in which we

---

**4.** Absent direct testimony from Bosari, this statement constitutes hearsay. For purposes of this opinion, this court does not rely on the truth of whether Magnificio's daughter threw a stone at Bosari's vehicle.

**5.** As previously noted, this court discusses this conversation *infra* which is subject to the hearsay rule if offered for the truth of the content of the conversation.

**6.** See the preceding footnote.

could protect ourselves as [o]fficers and encountering the people that we normally encounter on our job; and the types of people that might possibly have the disease that we would normally and usually deal with as [p]olice [o]fficers.

(Docket Entry # 30, Ex. 1). He further testified that he believed he "was instructed, at some time, that HIV could be normally and usually expected to be transmitted through the mixture of bodily fluids such as blood or sputum and possibly sexual fluids" usually encountered at an accident scene. He remembers receiving advice to wear barrier protection if required "to give CPR to an unknown subject." (*Id.*).

In the area of privacy rights, Tibbetts does not recall where or when he received training. From his training, Tibbetts is not aware of the privacy rights of individuals with HIV infection.[7] He has no direct knowledge "about anything with HIV, itself" but, apparently irrespective of knowledge received through training, Tibbetts knows that any disease "should normally and usually be treated with confidentiality befitting the privacy of the individual." (Docket Entry # 30, Ex. 1).

According to George B. Madsen, Jr. ("Madsen")[8] any officer who became a member of the Plymouth police department from 1988 to 1990 received training that information received was generally confidential. It was the "custom" of the Plymouth police department not to release confidential information to the public. He noted, in passing, that, "There's private information as far as health issues go—as far as physical conditions go." Madsen further stated that an individual's medical condition might appear "in a report" and the condition was "part of the confidential information which may be received." (Docket Entry # 30, Ex. 6).

## DISCUSSION

Summary judgment is permissible when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Inferences are drawn in favor of plaintiff, the nonmoving party. *Space Master International, Inc. v. City of Worcester*, 940 F.2d 16 (1st Cir.1991); *Herbert W. Price v. General Motors Corporation*, 931 F.2d 162 (1st Cir.1991) (record viewed in light most favorable to nonmoving party).

In deciding whether a factual dispute is genuine, this court must determine whether "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *accord Aponte–Santiago v. Lopez–Rivera*, 957 F.2d 40, 41 (1st Cir. 1992) (citing *Anderson*, 477 U.S. 242, 106 S.Ct. 2505). A fact is "material" if it might affect the outcome of the suit under the governing substantive law. *Beck v. Somerset Technologies*, 882 F.2d 993 (5th Cir.1989) (citing *Anderson*, 477 U.S. 242, 106 S.Ct. 2505).

Once defendants carry their burden under Rule 56(c), plaintiff, as the nonmoving party, must do "more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Furthermore, on issues where plaintiff bears the burden of proof at trial, plaintiff "must reliably demonstrate that specific facts sufficient to create an authentic dispute exist." *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 48 (1st Cir.1990).

In their supporting memorandum, defendants argue the following: (1) summary judgment is appropriate under count I inasmuch as Tibbetts did not violate plaintiff's

---

7. Abbott testified that he never received any training about the privacy rights of individuals with HIV. (Docket Entry # 33, Ex. 5).

8. Madsen's position in the Plymouth police department was not identified in the excerpts of his deposition transcript provided by defendants. In the framing of questions, Madsen was referred to as "Chief." (Docket Entry # 30, Ex. 6).

In her opposition, plaintiff attached exhibits three and four but made no reference to these exhibits in her memorandum. Nor do the excerpts of these deposition transcripts identify the individual being deposed. (Docket Entry # 33, Ex. 3 & 4).

constitutional right to privacy under section 1983 on the basis of *admissible* evidence contained in the record; (2) summary judgment is appropriate under count II inasmuch as Tibbetts made no improper disclosure and under count III inasmuch as any disclosure, if made, was neither improper not a threat, intimidation or coercion; (3) summary judgment is appropriate under count IV inasmuch as the disclosure if any, was neither intentional nor utterly intolerable; (4) summary judgment is appropriate under count V against the town inasmuch as no federal claim is asserted against the town, there is insufficient evidence for liability, the presentment letter is defective and there is no causal relation. (Docket Entry. # 30). This court addresses these arguments *seriatim.*

### I. *Count I*

Liability under section 1983 requires a showing that: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived plaintiff of rights, privileges or immunities secured by the Constitution of laws or the United States. *Gutierrez–Rodriguez v. Cartagena,* 882 F.2d 553, 559 (1st Cir.1989). Plaintiff complains that Tibbetts violated her right to privacy under the Constitution. Defendants maintain, however, that Tibbetts made no constitutionally impermissible disclosure. In addition, defendants contend that the only evidence to support an improper disclosure is plaintiff's conversation with Magnificio which constitutes hearsay. (Docket Entry # 30).

 Turning to the first argument, it is well established that plaintiff has a constitutional right to privacy sufficient to establish liability under section 1983. *Daury v. Smith,* 842 F.2d 9, 13 (1st Cir.1988). As expressed by the Supreme Court, the Constitution protects two types of privacy interests. "One is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." *Whalen v. Roe,* 429 U.S. 589, 599–600, 97 S.Ct. 869, 876, 51 L.Ed.2d 64 (1977). It is the former which implicates the issues in the case at bar.

The First Circuit has yet to express a position on the issue of the privacy rights attendant to disclosure of one's HIV status. In *Borucki v. Ryan,* 827 F.2d 836 (1st Cir. 1987), the court determined that the right to prevent disclosure of the contents of a court ordered psychiatric report was not "clearly established" prior to June 1983. *Id.* at 844. The court nevertheless acknowledged that the majority of courts considering the issue as of June 1983 had concluded that the constitutional right to privacy is implicated by the disclosure of a broad range of personal information. *Id.* at 846.

There are few areas which more closely intimate facts of a personal nature than one's HIV status. *See Woods v. White,* 689 F.Supp. 874, 876, *affm'd,* 899 F.2d 17 (7th Cir.1990) (W.D.Wisc.1988). The decision of who to tell and when to relate such information is an emotionally sensitive area "fraught with serious implications for that individual." *Doe v. Coughlin,* 697 F.Supp. 1234, 1237 (N.D.N.Y.1988) (recognizing that family members may abandon the AIDS victim and the discrimination accompanying public dissemination of the diagnosis); *accord Doe v. Borough of Barrington,* 729 F.Supp. 376, 384 (D.N.J.1990) (detailing stigma of harassment attendant with disclosure).

 Following the lead of other courts considering this issue, this court finds that plaintiff has a constitutional right to privacy which encompasses nondisclosure of her HIV status. *Harris v. Thigpen,* 941 F.2d 1495, 1513 (11th Cir.1991) (assuming, arguendo, a constitutionally protected privacy interest in nonconsensual disclosure of HIV status); *Faison v. Parker,* 823 F.Supp. 1198 (E.D.Pa. 1993) (stating that mental health and HIV status information contained in presentence report deserves high degree of protection); *Doe v. City of Cleveland,* 788 F.Supp. 979, 985 (N.D.Ohio 1991) (arrestee has constitutional right to privacy encompassing nondisclosure of information related to AIDS); *Nolley v. County of Erie,* 776 F.Supp. 715, 729–731 (W.D.N.Y.1991) (collecting cases and finding that inmates have constitutional right to privacy covering unwarranted disclosure of HIV status); *Doe v. Borough of Barrington,* 729 F.Supp. 376, 383 (D.N.J.1990) (Con-

stitution protects wife and children from governmental disclosure by police officer of their husband's and father's infection with AIDS); *Rodriguez v. Coughlin,* 1989 WL 59607 at * 3 (W.D.N.Y. June 5, 1989) (complaint claiming violation of right to privacy stated cause of action under section 1983 thereby precluding unjustified disclosure of inmate's AIDS status); *Woods v. White,* 689 F.Supp. at 876 (plaintiff retains right not to disclose HIV infection despite incarceration).

This court must therefore balance plaintiff's right to confidentiality against the government's interest in disclosure. *Faison v. Parker,* 823 F.Supp. 1198, 1201–02 (E.D.Pa. 1993); *Doe v. City of Cleveland,* 788 F.Supp. 979, 985 (N.D.Ohio 1991); *Doe v. Borough of Barrington,* 729 F.Supp. 376, 383 (D.N.J. 1990).[9] As noted by one court, the circumstances surrounding the disclosure and the means employed do not define the right to privacy. Rather, the circumstances surrounding disclosure are central to a balancing of plaintiff's right to confidentiality against the state's interest in disclosure. *Doe v. Coughlin,* 697 F.Supp. at 1237 & n. 6.

■ Defendants argue that no actionable conduct took place on February 1, 1989, concerning Tibbetts' conversation with Bosari. Thus, rather than offer a legitimate reason for the disclosure, defendants argue that Tibbetts made no improper disclosure on February 1, 1989. Plaintiff's complaint, however, complains of the allegedly forced disclosure of her HIV status during her telephone conversation with Tibbetts on November 20, 1988, as well as Tibbetts' alleged disclosure to Bosari on February 1, 1989. Based on Tibbetts' personal knowledge, it is apparent that he discussed plaintiff's prescription for retrovir with doctors and nurses at Jordan Hospital as well as with Abbott on November 20, 1988. Tibbetts telephoned plaintiff and, viewing the facts in plaintiff's favor, she was forced to admit she was infected with HIV. This court therefore finds a material issue of fact exists with respect to whether Tibbetts violated plaintiff's right to privacy concerning

her medical condition as an individual infected with HIV.

■ Turning to the events of February 1, 1989, Tibbetts does not recall telling Bosari that plaintiff was a "sad case." In fact, Tibbetts recollects not telling Bosari about plaintiff's illness. (Docket Entry # 30, Ex. 1). Although excerpts of Bosari's deposition are less than clear, she obliquely confirms that she did not discuss plaintiff's health status with Tibbetts.

Plaintiff relies on her recapitulation of the February 1, 1989 Tibbetts/Bosari conversation as described to her by Magnificio. Plaintiff additionally relies on her testimony that Bosari adopted part of plaintiff's version of the conversation and confirmed to plaintiff that Tibbetts told Bosari that plaintiff was a sad case.

Facts upon which a nonmovant may rely in opposing summary judgment must be admissible but need not be in admissible form. Rule 56(e), Fed.R.Civ.P., allows plaintiff to oppose summary judgment with the evidentiary material listed in Rule 56(e), Fed. R.Civ.P. Plaintiff, as the nonmovant with the burden of proof at trial to show Tibbetts' violation of a federally protected right, "cannot expect the court ... to give weight to averments not made upon personal knowledge or those which are in a form patently inadmissible at trial." *Garside v. Osco Drug, Inc.,* 895 F.2d at 49.

Plaintiff's deposition testimony is as follows:

> The following day [February 2, 1989] Anita Magnificio approached me in the front hallway and said that she had just received a phone call from Lynn Quintell saying that Kim Bosari had told Lynn Quintell that I had AIDS; that from her conversation with the officer the day before who responded to the call, he [Tibbetts] made various statements to her regarding myself, and that I had an illness and that I was a sad case and the neighborhood children would be kept from my house or playing in my yard.[10]

---

9. The Third Circuit considers a number of factors in balancing the competing interests. *Unit-* *ed States v. Westinghouse,* 638 F.2d 570, 578 (3rd Cir.1980).

10. Upon further questioning, plaintiff rephrased

With respect to plaintiff's conversation with Bosari later in the day on February 2, 1989, plaintiff testified that:

> I confronted her [Bosari] with what I had heard, and she confirmed that this conversation occurred with her and the officer [Tibbetts].

If offered to prove the truth of the assertion that Tibbetts so spoke, plaintiff's testimony is hearsay, Fed.R.Evid. 801(c), and inadmissable under Fed.R.Evid. 802. *See Samuelson v. Durkee/French/Airwick,* 760 F.Supp. 729, 739 (N.D.Ind.1991), *affm'd,* 976 F.2d 1111 (7th Cir.1992).

Plaintiff submits that the conversation is not being offered to prove the truth of the matter asserted. She maintains that the statements "are not offered to prove whether or not plaintiff has AIDS, or whether she is a 'sad case' but rather to show that the conversation occurred." (Docket Entry # 33). It is true that out of court statements are inadmissible "only if offered for the truth of the matter therein." *Morgan v. Massachusetts General Hospital,* 901 F.2d 186, 190 (1st Cir.1990); Fed.R.Evid. 801(c). While this distinction is sometimes difficult to draw, *see Boston Athletic Association v. Sullivan,* 867 F.2d 22, 31 (1st Cir.1989) (in trademark infringement action, statements offered to show likelihood of confusion rather than truth of contents), this court concludes that the statements are, in fact, offered to prove the truth of the matters stated therein. Plaintiff's version of the Bosari/Tibbetts conversation only becomes relevant when the content of the conversation is examined. Plaintiff cannot sidestep the hearsay rule through the fine distinction she wishes this court to make. Both Tibbetts and Bosari are available to testify. What these available declarants said to each other cannot be established by what Bosari told Quintell who then told Magnificio who then told plaintiff. Accordingly, while this court denies defendants' summary judgment under count I, plaintiff is advised that the above testimony concerning the events of February 1 and 2, 1989, is inadmissible in its present form. Nor does this court consider such "evidence" in denying defendants' motion as to count I.

this version of events to a limited degree.

## II. *Counts II and III*

As to count II, defendants argue that, for reasons stated with respect to count I (i.e., liability under section 1983), plaintiffs fail to state a claim for relief under chapter 214 on the basis that no disclosure took place. Defendants' argument is misplaced.

■ Chapter 214 focuses on interference with a person's privacy rights under the law of the Commonwealth of Massachusetts. Liability under chapter 214 is "not dependent on communications of the personal matters to the public at large." *Tower v. Hirschhorn,* 397 Mass. 581, 492 N.E.2d 728, 732 (1986). As noted in *Hirschhorn* in denying a motion for a judgment notwithstanding the verdict, "disclosure without the consent of the patient, of confidential medical information to two individuals, as alleged by the plaintiff, would be sufficient to warrant a finding of invasion of privacy" under chapter 214. *Id.,* 492 N.E.2d at 732. Similarly, interoffice communications among corporate employees of personal facts of another employee constitute a sufficient disclosure under chapter 214. *Bratt v. International Business Machines Corporation,* 392 Mass. 508, 467 N.E.2d 126, 134 & n. 15 (Mass.1984). Consequently, there exists a material issue of fact concerning Tibbetts' communications on November 20, 1988.

■ Under count III, defendants argue that no constitutional violation took place. For reasons stated in part I *supra,* this argument is unpersuasive for purposes of summary judgment. In addition, defendants maintain that no threat, intimidation or coercion took place within the meaning of chapter 12.

Liability under chapter 12 requires: (1) interference or attempted interference with a right secured by the Constitution or a right secured by the constitution of the Commonwealth of Massachusetts and (2) "that the interference or attempted interference was by 'threats, intimidation or coercion.' " *Rosenfeld v. Board of Health of Chilmark,* 27 Mass.App.Ct. 621, 541 N.E.2d 375, 379

(1989). Chapter 12 is thus "primarily aimed at intentional conduct." *Andujar v. City of Boston*, 760 F.Supp. 238, 243 (D.Mass.1991). Actual or potential physical violence, however, is neither a decisive nor a required factor in establishing the latter element. *Broderick v. Roache*, 803 F.Supp. 480, 486–487 (D.Mass. 1992) (finding genuine material issue of fact sufficient to withstand summary judgment).

Mindful that this court must view the facts in plaintiff's favor, she established that on November 20, 1988, Tibbetts impliedly threatened that if she did not disclose her confidential HIV status, he would not return her medication. This court therefore finds sufficient evidence of threats, intimidation or coercion to withstand defendants' summary judgment under count III.

### III. *Count IV*

Under count IV, defendants maintain that Tibbetts did not commit an intentional act which was utterly intolerable in a civilized society. Defendants additionally argue that Tibbetts did not disclose private, medical information nor commit any other proscribed activity under count IV.

█ Liability for the tort of intentional infliction of emotional distress requires plaintiff to establish: (1) "that the actor intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of his conduct;" (2) "that the conduct was 'extreme and outrageous,' 'was beyond all possible bounds of decency,' and was 'utterly intolerable in a civilized community;'" (3) "that the actions were the cause of the plaintiff's distress; and" (4) "that the emotional distress sustained by the plaintiff was 'severe' and of a nature that no reasonable person 'could be expected to endure.'" *Thorpe v. Mutual of Omaha Insurance Company*, 984 F.2d 541, 545 (1st Cir.1993) (quoting *Agis v. Howard Johnson Company*, 371 Mass. 140, 355 N.E.2d 315, 318–319 (1976)). Defendants, rather cryptically, seek summary judgment on the second element. (Docket Entry # 30, p. 13).

█ It is important to note that liability cannot be premised on mere insults, threats or petty oppression. *Finucane v. Town of Belchertown*, 808 F.Supp. 906, 911 (D.Mass. 1992) (citing *Foley v. Polaroid Corporation*, 400 Mass. 82, 508 N.E.2d 72, 81 (1987)). Moreover, as suggested by the First Circuit, it is eminently appropriate for the court to assess the second prong of this tort on a summary judgment motion. *Caputo v. Boston Edison Company*, 924 F.2d 11, 14 (1st Cir.1991) (second prong can be decided by court without becoming jury question).

█ Quite frankly, the evidence, or lack thereof, presented thus far makes it an extremely close issue as to whether to dismiss count IV for failure of plaintiff to establish a genuine issue of material fact concerning Tibbetts' conduct under the second prong. Although a single and dramatically cruel incident can be sufficiently outrageous to sustain a showing under the second prong, *see Forcucci v. United States Fidelity and Guarantee Company*, 817 F.Supp. 195, 204 (D.Mass. 1993) (dismissal on summary judgment), there is a high threshold to establish an actionable claim of intentional infliction of emotional distress, particularly without an accompanying physical injury. *See Caputo v. Boston Edison Company*, 924 F.2d at 13–14 (recognizing the court in *Agis* adopted elements of tort set forth in § 46 of Restatement (Second) of the Law of Torts).

█ Tibbetts' telephone conversation with plaintiff on November 20, 1988, barely meets this standard. Viewing the facts in plaintiff's favor, unnecessarily coercing an individual to reveal her HIV status and advising her that he discussed her AZT medication with various nurses and doctors sufficiently establishes a genuine issue of material fact. The details of the November 20, 1988 conversation are disputed and the necessary outrageousness of Tibbetts is also disputed. Reasonable minds could differ in assessing Tibbetts' conduct under the second prong. Summary judgment under this argument is therefore inappropriate.

### IV. *Count V*

In count V plaintiff alleges liability against the town under chapter 258, the Massachusetts Tort Claims Act, as a result of the

town's "failure to adopt adequate policies to protect the privacy rights of persons with AIDS, and its failure to adequately train and supervise defendant Tibbetts in the protection of the privacy rights of persons with AIDS." (Docket Entry # 1, ¶ 42). Counts one through four of plaintiff's complaint allege violations of plaintiff's right to privacy and intentional misconduct on the part of Tibbetts.

Defendants initially argue that this count falls outside this court's supplemental jurisdiction. Section 1367(a) of Title 28 of the United States Code provides this court with "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." [11] *See generally, Rosen v. Chang,* 758 F.Supp. 799, 802–804 (D.R.I.1991) (discussing supplemental jurisdiction under 28 U.S.C. § 1367). Under this statute, it is within this court's discretion to decline to exercise its supplemental jurisdiction under certain circumstances. 28 U.S.C. § 1367(c). This court finds the two claims related inasmuch as they arise out of the same series of events. Accordingly, this court rejects defendants' argument.

Defendants additionally contend that plaintiff's presentment letter under chapter 258 is defective because it fails to advise the town of the specific negligent acts which form the basis of liability under count V. Failure to present a written demand within two years after the date of the injury or presentation of a defective demand will preclude relief against the town under chapter 258.[12] Mass.Gen.L. ch. 258, § 4; *see Dattoli v. Hale Hospital,* 400 Mass. 175, 508 N.E.2d 100, 101–102 (1987); *Fearon v. Commonwealth,* 394 Mass. 50, 474 N.E.2d 162, 164–165 (1985). By letter dated April 10, 1990, plaintiff made a demand for relief under section four of chapter 258, addressed to the Chair of the Board of Selectmen of the Town of Plymouth. (Docket Entry # 30, Ex. 7). The three page letter details the events of November 20, 1988, and February 1, 1989. Plaintiff's failure to identify particular acts as negligent is not fatal to her claim for relief under chapter 258. This court finds the April 10, 1990 letter adequately notifies the town of plaintiff's claim for purposes of section four.

Whether the town is liable under chapter 258, however, is dependent upon the scope of the statute. Section two of chapter 258 provides that "[p]ublic employers shall be liable for injury or death caused by the negligent or wrongful act or omission of any public *employee* [emphasis added] while acting within the scope of his office or employment." Mass.Gen.L. ch. 258, § 2. Section 10(c) of chapter 258, however, expressly excludes from the reach of chapter 258 "any claim arising out of an intentional tort, including . . . invasion of privacy." Mass.Gen.Laws chapter 258, § 10(c). Thus, while section 10(c) does not bar claims sounding in negligence or based on wrongful conduct of a public employee, "governmental liability [does] not attach to 'any claim arising out of an intentional tort.'" *Ortiz v. County of Hampden,* 16 Mass.App. 138, 449 N.E.2d 1227, 1228 (1983). Thus, in the event Tibbetts' actions are outside the reach of chapter 258 as constituting intentional conduct, the town cannot be liable under chapter 258. *See generally* Joseph W. Glannon *Governmental Tort Liability under the Massachusetts Tort Claims Act of 1978,* 66 Mass.L.R. 7 (1981).

In *Spring v. Geriatric Authority of Holyoke,* 394 Mass. 274, 475 N.E.2d 727 (1985), the court upheld the dismissal of a plaintiff's claims for invasion of privacy and intentional infliction of emotional distress as against the public employer. *Id.,* 475 N.E.2d at 734. In a footnote, the court recognized that the individual claims against the employees for intentional invasion of privacy properly

---

**11.** Subdivision (a) of section 1367 allows pendent party jurisdiction and "concludes with a provision that overrules" *Finley v. United States,* 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989). 28 U.S.C. § 1367, Practice Commentary.

**12.** Section one expressly defines "public employer" to include a city or town. Mass.Gen.L. ch. 258, § 1. Section two precludes relief against the employee for his negligent or wrongful acts committed while acting within the scope of his employment. Mass.Gen.L. ch. 258, § 2.

reached the jury.[13] *Id.* at 735 & n. 10; *accord Mellinger v. Town of West Springfield,* 401 Mass. 188, 515 N.E.2d 584, 589 (1987); *see Lane v. Commonwealth,* 401 Mass. 549, 517 N.E.2d 1281, 1283 (1988) ("basic provisions of [chapter 258] are not applicable to intentional torts by State employees and 'normally a "public employer" cannot be held liable for intentional tort' ").[14]

 Plaintiff attempts to side step the section 10(c) exclusion by only naming the town in a negligence count (count V) based, to use plaintiff's words, "on the town's negligent failure to train its officers in HIV and/or AIDS confidentiality matters." (Docket Entry # 33). Chapter 258 is designed to abrogate certain instances of governmental immunity by creating an exclusive remedy for negligent and/or wrongful acts committed by employees of public employers. The express provisions of section two state that liability is based upon the public employee's negligent or wrongful conduct. Plaintiff's allegations against the town are based on Tibbetts' intentional infliction of emotional distress and his interference with plaintiff's right to privacy. Stated otherwise, although the town is not named in counts one through four, liability under chapter 258 is premised not on the independent liability of the public employer but upon the acts of its public employees. As such, the scope of chapter 258 does not create a waiver of the town's immunity for such intentional misconduct which is governed under the common law.[15]

Defendants correctly note, albeit in one sentence, that the town cannot be held liable for Tibbetts' intentional acts. While the indemnity provisions may apply, the town is not directly liable under chapter 258 for "any claim," including a failure to train, "arising out of an intentional tort" such as invasion of privacy. Mass.Gen.L. ch. 258 § 10(c). Plaintiff brings count V against the town rather than against the negligent, unidentified town employees involved in the alleged negligent training of Tibbetts. Dismissal on a summary judgment motion of count V, as brought under chapter 258, is therefore proper.[16]

It is important to recognize, however, that chapter 258 does not displace the town's liability under section 1983. *See* Joseph W. Glannon *Governmental Tort Liability under the Massachusetts Tort Claims Act of 1978,* 66 Mass.L.R. 7 (1981). Plaintiff, however, fails to include a count against the town under section 1983 based upon the town's failure to train or supervise. *See Manarite v. City of Springfield,* 957 F.2d 953, 958 (1st Cir.), *cert.* denied, —— U.S. ——, 113 S.Ct. 113, 121 L.Ed.2d 70 (1992) (discussing standard to impose municipal liability under section 1983); *Doe v. City of Cleveland,* 788 F.Supp. 979, 986 (N.D.Ohio 1991) (discussing municipal liability in context of failure to train regarding AIDS).

### CONCLUSION

In accordance with the foregoing discussion, defendants' motion for summary judgment (Docket Entry # 29) is ALLOWED as to count V and otherwise DENIED.

---

**13.** Section 9A of chapter 258 provides indemnity to police officers committing intentional torts within the scope of their official duties. Mass. Gen.L. ch. 258, § 9A; *see also Pinshaw v. Metropolitan District Commission,* 402 Mass. 687, 524 N.E.2d 1351 (1988) (discussing indemnification under section 9A at length).

**14.** The court in *Lane* further noted that such claims against the public employer are governed by common law principles. *Lane v. Commonwealth,* 517 N.E.2d at 1283. Plaintiff, however, fails to bring a common law claim against the town.

**15.** Nor is this case analogous to the claim for negligent hiring and supervision contained in

*Doe v. Town of Blandford,* 402 Mass. 831, 525 N.E.2d 403 (1988). In *Blandford,* the issue was whether a substantial issue of material fact existed with regard to the individual school committee members alleged negligent hiring and supervision of a school guidance counselor. The court further stated that the defendant towns' motions for summary judgment should have been allowed on different grounds. *Id.,* 525 N.E.2d at 406. Consequently, the court never reached the pertinent issue in the case at bar.

**16.** Consequently, this is not the situation in which this court must view the complaint under a Rule 12(b)(6) standard as was the case in *Ortiz v. County of Hampden,* 16 Mass.App. 138, 449 N.E.2d 1227 (1983).