USCA1 Opinion

 

 August 4, 1994 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________ No. 93-2121 THERESA LYONS AND DENNIS LYONS, Plaintiffs, Appellants, v. NATIONAL CAR RENTAL SYSTEMS, INC. (OF DELAWARE), Defendant, Appellee. ____________ ERRATA SHEET The opinion of this court issued on July 27, 1994, is amended as follows: Amend the cover sheet as follows: "Kathleen E. Cross, with _________________ whom Brenda M. Cotter, Gerald P. Tishler, and Brown, Rudnick, _________________ __________________ ________________ Freed & Gesmer, P.C. were on brief for appellee." ____________________ UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 93-2121 THERESA LYONS AND DENNIS LYONS, Plaintiffs, Appellants, v. NATIONAL CAR RENTAL SYSTEMS, INC. (OF DELAWARE), Defendant, Appellee. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. William G. Young, U.S. District Judge] ___________________ [Hon. Donald E. Walter, U.S. District Judge] ___________________ ____________________ Before Breyer,* Chief Judge, ___________ Bownes, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ ____________________ Matthew Cobb, with whom the Law Firm of Matthew Cobb was on brief ____________ _________________________ for appellants. Kathleen E. Cross, with whom Brenda M. Cotter, Gerald P. Tishler, _________________ _________________ _________________ and Brown, Rudnick, Freed & Gesmer, P.C. were on brief for appellee. ____________________________________ ____________________ July 27, 1994 ____________________ ____________________ *Chief Judge Stephen Breyer heard oral argument in this matter but did not participate in the drafting or the issuance of the panel's opinion. The remaining two panelists therefore issue this opinion pursuant to 28 U.S.C. 46(d). BOWNES, Senior Circuit Judge. Plaintiff-appellant, BOWNES, Senior Circuit Judge. ____________________ Theresa Lyons (Lyons), appeals from the entry of judgment as a matter of law in favor of defendant-appellee, National Car Rental Systems, Inc. (National), on her claims of slander and violating the Massachusetts Civil Rights Act. Lyons had filed a nine count complaint in the district court against National after her termination. Six counts were dismissed pretrial on a motion for summary judgment.1 No appeal was taken from the summary judgment dismissal. The remaining three counts, which included a count by plaintiff's husband for loss of consortium, were tried before a jury. The trial was bifurcated. After plaintiff rested on her liability counts, defendant moved for judgment as a matter of law under Fed. R. Civ. P. 50. After briefing and argument by the parties, the court entered judgment for defendant as a matter of law. Plaintiff filed a timely appeal which included the loss of consortium count. The issues on appeal are whether either or both of the liability counts should have been submitted to the jury. Our standard of review has been stated as follows: A reviewing court applies the same standard that governed adjudication of ____________________ 1. The counts dismissed on motion for summary judgment were breach of contract, libel, invasion of privacy, intentional infliction of emotional distress, negligent infliction of emotional distress, and false imprisonment. -2- 2 the Rule 50 motion below: we "scrutiniz[e] the proof and the inferences reasonably to be drawn therefrom in the light most hospitable to the nonmovant," refraining entirely from "differential factfinding." In the process, we may "not consider the credibility of witnesses, resolve conflicts in testimony, or evaluate the weight of the evidence." Cook v. Rhode Island Dep't of Mental Health, 10 F.3d 17, 21 ____ ____________________________________ (1st Cir. 1993) (citations omitted). THE FACTS THE FACTS _________ In accord with the standard of review, we state the facts in the light most favorable to the plaintiff. Lyons worked for National at Logan International Airport in Boston, Massachusetts. She began working for National in 1983 as a rental representative, became a customer service manager in 1985, and was promoted to regional training manager in 1989. Lyons' immediate supervisor was Ellen Justiniano. This action arose from events that occurred during a training conference held by National at its headquarters in Minneapolis, Minnesota, during the week of April 8, 1991. Lyons attended the conference along with her regional counterparts. During the conference, Lyons encountered some problems with her supervisor, Justiniano. The first day she arrived Lyons was in the elevator with Justiniano. Lyons looked at her keys and remarked, "I am a little bit confused." Whereupon Justiniano responded, "Well, what else is new?" She was told during one session by Justiniano that -3- 3 she was embarrassing her by nodding off and to go into the bathroom and put on some make-up. During one of the training sessions Justiniano slipped her a note which read, "Terry, I just put you through training. Why are you embarrassing me? Why aren't you answering any questions?" On Friday, April 12, the last day of the conference, Justiniano pulled her aside and told her that the company was investigating a car theft from its office in Boston and Bryan Viau, National's chief of security, would like to speak to Lyons to get some input. Lyons agreed to meet with Viau at his office at ten o'clock. After greeting Lyons in his office, Viau escorted her into a very small room. It had a round table with a box of tissues on it, which caught her eye, and chairs at the table two or three feet apart. One of the chairs was already occupied by a woman, Trudie Levesque. She was there because of National's policy when questioning employees of the opposite sex. Viau started the interview by asking Lyons how her week had been going. She responded by starting to cry. She told Viau that she had a bad week, that she had a bad relationship with her boss, and that her boss had not been very nice to her. Lyons then asked Viau to please tell her what was going on. Viau pointed to a folder and said, "I have strong evidence that you were involved in a company theft." Lyons -4- 4 became hysterical and asked several times if she could see the evidence. Viau refused to show her the evidence. Lyons then said, "Why would I be crying so hard if I was guilty of doing something like that?" Viau responded by saying that it was people like her who cry a lot that are the guilty ones. He also said that it was people like her who know the ins and outs of the company that do things such as that. Viau also told her that she had the face of a good liar. Viau continued to say, "Terry, you know, you know the ins and outs. It's people like you. If you don't speak now, you will be prosecuted. You will lose your job." At some point Viau left the room. When he came back, Lyons asked him what was going to happen at this point. He said, "You go back to your job, and when we have the evidence we will prosecute you. Just go back and do your job." Viau also told her that if a trial "was to come forward," he would let her know. This ended the interview. During the interview, Lyons named her stepson as the possible thief because he had a prior record of stealing cars. She did this in an attempt to help Viau identify the real thief. On cross-examination Lyons said that she never asked to leave the interrogation room. She testified that Viau never touched her or threatened to touch her, and that although Viau raised his voice during the interview, he never shouted. Based on facts that were represented to have been -5- 5 known by National, Lyons agreed that National had some basis for questioning her. She further testified on cross that she had the opportunity to say anything she wanted about the theft. When Lyons got into the van to go to the airport for her trip home, she was still visibly very much upset. When asked by some of her colleagues what was wrong, she told them that she had been accused of car theft. After arriving home, Lyons told members of her family about the interview and accusation of car theft. She went back to work in National's Boston office. Viau's questioning of Lyons was prompted by a prior investigation which disclosed evidence suggesting that the theft was an inside job involving someone with the name of Lyons. The stolen car was ultimately found in the possession of a Barbara Lyons. The only link between Barbara Lyons and the plaintiff was that, unknown to plaintiff, Barbara Lyons was having a relationship with plaintiff's brother-in-law, Patrick Dello Iacono, who was a sergeant on the Everett Police department. Viau decided to interview plaintiff after consultation with her supervisors, Foley, Ceruolo, and Justiniano. THE SLANDER COUNT THE SLANDER COUNT _________________ Because this is a diversity case, Massachusetts law applies. We agree with the district court that the -6- 6 statement, "National has strong evidence you are involved in a car theft," was slanderous. Galvin v. New York, New Haven ______ ___________________ and Hartford R.R. Co., 168 N.E.2d 262, 294 (Mass. 1960) _______________________ (accusations of crime actionable without proof of special damage); Bander v. Metropolitan Life Ins. Co., 47 N.E.2d 595, ______ __________________________ 598 (Mass. 1943) (same). The district court held that the other statements made during the interview were not slanderous: "You have the face of a good liar"; "It's people like [you] who cry that are the guilty ones"; "It's people like [you] who know the ins and outs of the company that do things such as that"; "Terry, you know, you know the ins and outs. It's people like you"; and "If you don't speak now, you will be prosecuted." We do not think that these statements should have been excised from the accusation of car theft. All the statements made by Viau were part and parcel of that accusation. This is not a situation where statements are made at different times and in different contexts. The statements were made during one interview. National accused plaintiff of car theft, and because she denied it, said she was a liar. Part of the theft accusation was that as an employee of National, she had the knowledge of company practice and the opportunity to commit the theft. She also was told that if she did not confess to the theft she would be prosecuted. The statements, taken as a whole, constituted -7- 7 a single accusation that Lyons had stolen a company car and an attempt by National to have her confess to the accusation. Defendant argues that because plaintiff did not specifically object to the district court rulings finding the statements not slanderous during the Rule 50 hearings, she is precluded from raising the issue here. There is no merit to this contention. The plaintiff argued that the statements were slanderous during the Rule 50 hearing. Tr., 2d day, pp. 95-97. And she also argues to the same effect in her appellate brief. Plaintiff's Brief at 13. This was sufficient to preserve the issue for review. There is no requirement that specific objections to the court's rulings be made during a Rule 50 hearing. It suffices that the plaintiff raise the issues so that the court understands what they are. This was clearly done here. The requirement that specific objections be made to the introduction of evidence or to the court's final charge to the jury do not, contrary to defendant's suggestion, apply to a Rule 50 hearing. Although defendant has not argued lack of publication on appeal, the district court did express doubts about publication during the Rule 50 hearing. We simply note that the publication requirement for a slander action under Massachusetts law was met here. Brauer v. Globe Newspaper ______ _______________ Co., 217 N.E.2d 736, 739 (Mass. 1966): ___ There is no requirement in an action of libel "that the defamatory matter be -8- 8 communicated to a large or even substantial group of persons. It is enough that it is communicated to a single individual other than the one defamed." Restatement: Torts, 577. See Bigelow v. Sprague, 140 Mass. 425, ___ _______ _______ 426-427, 5 N.E. 144; Rumney v. Worthley, ______ ________ 186 Mass. 144, 71 N.E. 316; Bander v. ______ Metropolitan Life Ins. Co., 313 Mass. _____________________________ 337, 349, 47 N.E.2d 595; Prosser, Torts (3d ed.) 108. In Bander v. Metropolitan Life Ins. Co., 47 N.E.2d ______ ___________________________ at 601, the court held that there was no "immunity from liability for defamation" communicated by one agent of a corporation to another agent. The presence of the third person in the interrogation room was sufficient to meet the publication requirement. We now turn to the related issues of conditional privilege and malice. We agree with the district court that the facts giving rise to a conditional privilege by National were proven during plaintiff's case-in-chief. National's prior investigation had disclosed that a person by the name of Lyons was probably involved in the car theft. Prior to the interrogation of plaintiff, Viau had grounds for suspecting that the theft was an inside job. And plaintiff herself stated that National had some basis to question her about the car theft. Massachusetts courts have recognized that a person may possess a conditional privilege to publish defamatory material if the publication is reasonably necessary to the protection or -9- 9 furtherance of a legitimate business interest. Bratt v. Int'l Business Machines Corp., 467 N.E.2d 126, 131 _____ ______________________________ (Mass. 1984); see also McCone v. New England Tel. and Tel. ___ ____ ______ __________________________ Co., 471 N.E.2d 47, 51 (Mass. 1984). ___ The basic issue is whether National lost its conditional privilege by abusing it. We rule that under the law and the facts this was a jury question. In Foley v. _____ Polaroid Corp., 508 N.E.2d 72 (Mass. 1987), the Supreme _______________ Judicial Court reiterated the test for abuse of the privilege: [w]hen as here, executives of a corporate employer make statements that defame an employee, and the information disclosed by those statements is reasonably related to the employer's legitimate business interests, the employee has the burden to prove that the statements were made recklessly, that is, that they were unnecessary, unreasonable, or excessively published. Of course, a statement made with knowledge of its falsity or with reckless disregard for the truth would be reckless within the meaning of the rule. Id. at 79-80 (citations omitted). ___ A finding of recklessness is necessary to overcome a conditional privilege. In Bratt, 467 N.E.2d at 131, the _____ court pointed out that proof of "actual malice" was not a prerequisite to the loss of the privilege. Id. (citing ___ Galvin, 168 N.E.2d at 266). The court then went on to ______ explain that Massachusetts law favored "recklessness" or "malice in fact" as the standard. Id. It defined one type ___ -10- 10 of "malice in fact" as "'the willful doing of an injurious act without lawful excuse.'" Id., n.9 (quoting Doane v. ___ _____ Grew, 107 N.E. 620, 621 (Mass. 1915)). The court concluded, ____ that loss of a defendant's conditional privilege in a defamation action through "unnecessary, unreasonable or excessive publication" requires proof that the defendant acted recklessly. Id. at 132. ___ We think that a factfinder could reasonably conclude that the statements made during the interrogation of plaintiff were reckless. Plaintiff was told at the outset by Viau: "I have strong evidence that you were involved in a company theft." Viau pointed to a folder during the accusation; this implied that it contained such evidence. But the evidence was not disclosed to plaintiff, despite her request to see it. In fact, there was no "strong evidence" that plaintiff had been involved in a company theft. All that National had at that time was, at best, a reasonable suspicion. Plaintiff was then called a liar and told that because of her position in the company she had the knowledge to commit the theft. She was then threatened with prosecution and loss of her job if she did not confess to the theft. These statements considered as a whole could be found to be "reckless" under Massachusetts law. We also think that "malice in fact" could legitimately be found. First, there was evidence from which -11- 11 a jury could find that plaintiff's immediate supervisor, Justiniano, either disliked plaintiff personally or was displeased with her conduct at the meeting. But of telling significance was the conduct of the interrogation. In fact, it was not an interrogation but an inquisition. Accusations and threats were made; there was no attempt to determine the facts objectively. The manner in which the interrogation was conducted fairly reeked of malice. It could reasonably be found that the accusations and threats made to plaintiff were "the willful doing of an injurious act without lawful excuse." Bratt, 467 N.E.2d at 131, n.9. _____ The judgment of the district court on the slander count is reversed. The determination was for the jury. Because the loss of consortium count rises or falls with the slander count, it also remains viable. THE MCRA COUNT THE MCRA COUNT ______________ Plaintiff's next argument on appeal arises from the district court's granting of National's motion for judgment as a matter of law on her Massachusetts Civil Rights Act [MCRA] claim. Plaintiff claimed that National, through its employee Viau, violated the MCRA by using threats and intimidation in an attempt to cause her to relinquish her Fifth Amendment right against self-incrimination. See Mass. ___ Gen. Laws ch. 12 11I. No claim was asserted against Viau individually. -12- 12 The MCRA states, in pertinent part: Any person whose exercise or enjoyment of rights secured by the constitution or laws of the United States . . . has been interfered with, or attempted to be interfered with [by any person or persons, whether or not acting under color of law, by threats, intimidation or coercion,] may institute and prosecute in his own name and on his own behalf a civil action for . . . money damages. . . . Id. 11H, 11I. The district court granted National's ___ motion, finding first that the MCRA did not recognize claims based on the doctrine of respondeat superior, and second that plaintiff presented not a "scintilla" of evidence that Viau's actions were taken pursuant to any policy or custom established by National. Plaintiff challenges on appeal only the first finding. Assuming, without deciding, that plaintiff would have had an actionable MCRA claim if she had named Viau as a defendant, we turn to the respondeat superior issue. The question of whether an employer may be held vicariously liable under the MCRA for the actions of its employee has not been addressed by any Massachusetts state court. See, e.g., Rodriques v. Furtado, 575 N.E.2d 1124, ___ ____ _________ _______ 1131 n.14 (Mass. 1991) (expressly declining to decide issue with respect to municipal employer); cf., e.g., O'Connell v. ___ ____ _________ Chasdi, 511 N.E.2d 349, 354 (Mass. 1987) (remanding for trial ______ MCRA claim asserted against private employer for acts of -13- 13 employer's agent, without questioning applicability of respondeat superior). Similarly, we have never had occasion to answer this question. See, e.g., Dean v. City of ___ ____ ____ ________ Worcester, 924 F.2d 364, 370 n.7 (1st Cir. 1991) (declining _________ to comment on issue with respect to municipal employer). The only courts that have addressed the issue have determined that claims under the MCRA cannot be based on the doctrine of respondeat superior. E.g., Broderick v. Roache, 803 F. Supp. ____ _________ ______ 480, 484 (D. Mass. 1992) (municipal employer); Jones v. City _____ ____ of Boston, 738 F. Supp. 604, 606 (D. Mass. 1990) (private _________ employer). "Absent controlling state court precedent, a federal court sitting in diversity may certify a state law issue to the state's highest court, or undertake its prediction, `when the [route] [the] state courts would take is reasonably clear.'" Vanhaaren v. State Farm Mut. Auto. _________ ______________________ Ins. Co., 989 F.2d 1, 3 (1st Cir. 1993) (citation omitted). ________ Because we find sufficient guidance on this issue, we follow the latter course. The Massachusetts Supreme Judicial Court [SJC] has clearly described the scope of the MCRA: The Legislature enacted [the MCRA] to provide a State remedy for deprivations of civil rights. The statute extended beyond the limits of its Federal counterpart by incorporating private action within its bounds. We conclude ___________ that the Legislature intended to provide _________________________________________ a remedy under [the MCRA], coextensive _________________________________________ -14- 14 with 42 U.S.C. 1983, except that the ______________________ Federal statute requires State action whereas its State counterpart does not. Batchelder v. Allied Stores Corp., 473 N.E.2d 1128, 1131 __________ _____________________ (Mass. 1985) (emphasis added). "[B]y reaching private party actions, the Legislature did not intend to create `a vast constitutional tort,'" and thus limited the MCRA remedy to cases involving threats, intimidation, or coercion. Bally v. _____ Northeastern Univ., 532 N.E.2d 49, 52 (Mass. 1989) (citation __________________ omitted). Rulings in 1983 cases predating the MCRA may be used to determine whether doctrines applicable under 42 U.S.C. 1983 also apply under the MCRA. See Duarte v. ___ ______ Healy, 537 N.E.2d 1230, 1232 (Mass. 1989) ("We presume that _____ the Legislature was aware of this case law [on qualified immunity] when it chose to pattern the Massachusetts Civil Rights Act after 1983."). Accordingly, we look to cases construing the federal Civil Rights Act for guidance in the present action. In Monell v. New York Dep't of Soc. Servs., 436 ______ _______________________________ U.S. 658 (1978), the Supreme Court considered whether local governments may be liable under 1983 for the unconstitutional conduct of their employees. The Court held that claims against municipalities cannot rest on a theory of respondeat superior, but may proceed if there is proof that the employee acted in accordance with the employer's policy -15- 15 or custom. Id. at 694. In a concurrence, Justice Powell ___ stated that Congress's intent, as expressed in the legislative history of 1983, can best be understood as limiting "the statutory ambit to actual wrongdoers, i.e., a ____ rejection of respondeat superior or any other principle of __________ ________ vicarious liability." Id. at 707 (Powell, J. concurring). ___ Plaintiff argues that Monell's rejection of ______ respondeat superior cannot be grafted on the MCRA because Monell concerns only municipalities, while the MCRA may be ______ invoked against private parties. We disagree. Although the holding in Monell is framed so that it expressly applies only ______ to local governments, the decision is based generally on the language and legislative history of 1983, not on principles--such as sovereign or qualified immunity-- applicable only to governmental entities. See Monell, 436 ___ ______ U.S. at 690-94. It is true that one aspect of Monell's discussion ______ of the legislative history of 1983 has no relevance to private corporations: certain members of Congress opposed making municipalities vicariously liable on the ground that Congress lacked the power to impose "positive" duties on local governments. Id. at 679-83, 693. We do not believe, ___ however, that this aspect of the Court's reasoning undermines our conclusion. The remainder of Monell focusses on matters ______ pertinent to all employers, public or private. The Court -16- 16 stated, for example, that Congress declined to make municipalities vicariously liable under 1983, despite arguments that vicarious liability would reduce the incidence of unconstitutional acts and would spread the cost of injuries throughout the community. Id. at 693-94. These ___ justifications are equally applicable to private corporations. The Massachusetts legislature enacted the MCRA in 1979, one year after Monell was decided. Presumably, the ______ legislature was aware of Monell. Duarte, 537 N.E.2d at 1232. ______ ______ The language of the MCRA contains no indication that the legislature intended to expand the scope of employer liability under the MCRA beyond that available under 1983. Compare Mass. Gen. Laws ch. 12, 11H ("Whenever any person _______ or persons, whether or not acting under color of law, interfere by threats, intimidation or coercion . . .") with ____ 42 U.S.C. 1983 ("Every person who, under color [of law], subjects, or causes to be subjected, any [other person] to the deprivation of any rights . . ."). Moreover, it is clear that the state legislature knew how to pass statutes embracing the doctrine of respondeat superior. E.g., Mass. ____ Gen. Laws ch. 151B 3(1) ("It shall be an unlawful practice: For an employer, by himself or his agent" to discriminate on the basis of race, religion, ethnicity, sex, or age); id. ch. ___ 258, 2 ("Public employers shall be liable for injury or -17- 17 loss of property . . . caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment . . . .") (enacted 1978). Finally, the parties have not cited anything in the legislative history of the MCRA indicating that the legislature intended to make employers vicariously liable for the acts of their employees. Accordingly, we hold that claims against employers under the MCRA cannot rest on the doctrine of respondeat superior. SUMMARY SUMMARY _______ We reverse the district court's judgment on the slander claim and on the loss of consortium claim based on the slander issue and remand for a new trial on those claims. As to the MCRA claim, the district court's judgment is affirmed. Affirmed in part, reversed in part. No costs. Affirmed in part, reversed in part. No costs. ______________________________________________ -18- 18