**Amar CHAABOUNI, Plaintiff,**

v.

**CITY OF BOSTON, John Doe I Police Officer, John Doe II Police Officer, Defendants.**

**Civil Action No. 00–11269–WGY.**

United States District Court,
D. Massachusetts.

Feb. 27, 2001.

William P. Monahan, Gargano & Associates, Cambridge, MA, for plaintiff.

Michael A. Goldsmith, Assistant Corporation Counsel, City of Boston Law Department, City Hall, Boston, MA, Kevin S. McDermott, City of Boston Law Department, City Hall, Boston, MA, for defendants.

## MEMORANDUM AND ORDER

YOUNG, Chief Judge.

## I. INTRODUCTION

The plaintiff, Amar Chaabouni ("Chaabouni"), brought suit against the City of Boston ("the City") and two of its police officers, now identified as Officers Buchanan and Thomas, for allegedly beating him in the course of a confrontation during traffic congestion. Now the City moves to dismiss the complaint against it. Fed. R.Civ.P. 12(b)(6).

## II. FACTUAL BACKGROUND

As the Court is bound, for purposes of a motion under Rule 12(b)(6), to take all allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor, *Petricca Dev. Ltd. Partnership v. Pioneer Dev. Co.*, 214 F.3d 216, 223 n. 6 (1st Cir.2000), the following summary of the facts adopts Chaabouni's vantage point.

On or about August 28, 1997 at approximately 10:00 p.m., Chaabouni was operating his taxi cab on Summer Street at Dorchester Avenue in Boston. Chaabouni was attempting to turn left onto Dorchester Avenue, but Summer Street was blocked due to construction. Officers Buchanan and Thomas were directing traffic at the site. Chaabouni alleges that the officers pulled him from his vehicle and proceeded to handcuff, assault, and beat him. Compl. ¶¶ 5–6. By assaulting, beating, threatening, and intimidating Chaabouni, the officers inflicted emotional distress upon him. *Id.* ¶ 5. Chaabouni also alleges that the passenger in the taxi cab stated that "the acts of the police officers were shocking." *Id.* ¶ 7. The complaint provides no other details regarding the incident itself.

The complaint identifies five counts under which Chaabouni intends to proceed in this lawsuit. Count I is a claim for assault and battery. Count II alleges that the City "was negligent because of its failure to provide proper and adequate training and supervision of the defendants." *Id.* ¶ 9. Count III lodges a claim for intentional infliction of emotional distress against the City as well as the officers. Count IV sets forth a claim for assault and battery by means of a dangerous weapon. Lastly, Count V alleges a violation of Chaabouni's

civil rights under the constitutions of the United States and the Commonwealth of Massachusetts pursuant to 42 U.S.C. § 1983 and Mass. Gen. Laws ch. 12, §§ 11 H, 11 I, respectively.[1] Each count addressed to the City will be considered in turn.

## III. DISCUSSION

### A. *Count II: Negligence*

The Massachusetts Tort Claims Act ("Act") provides the exclusive remedy for injuries allegedly caused by the negligent acts or omissions of municipal employees. Mass. Gen. Laws ch. 258, § 2. The Act abrogates the doctrine of sovereign immunity, but only to the extent provided in the statute. In particular, the Act provides that:

> Public employers shall be liable for injury ... caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his office or employment, in the same manner and to the same extent as a private individual under like circumstances .... The remedies provided by this chapter shall be exclusive of any other civil action or proceeding by reason of the same subject matter against the public employer .... Final judgment in an action brought against a public employer under this chapter shall constitute a complete bar to any action by a party to such judgment against such public employer or public employee by reason of the same subject matter.

*Id.* As is clear from the text of the statute, Chaabouni has a potential cause of action against the City.

■ The City offers two counter arguments. First, it asserts that even under the liberal pleading standard of *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), Chaabouni's allegation

of negligence against the City is insufficient. Only one paragraph—consisting of two sentences—is devoted to this count. It reads, "The Plaintiff incorporates by reference paragraphs one through eight. The Plaintiff alleges that the Defendant, City of Boston, was negligent because of its failure to provide proper and adequate training and supervision of the defendants." Compl. ¶ 9. Although Federal Rule of Civil Procedure 8 does "not require a claimant to set out in detail the facts upon which he bases his claim," the Rule at least requires " 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47, 78 S.Ct. 99. "The bottom line is simply this: while courts should construe pleadings generously, paying more attention to substance than to form, they must always exhibit awareness of the defendant's inalienable right to know in advance the nature of the cause of action being asserted against him." *Rodriguez v. Doral Mortgage Corp.*, 57 F.3d 1168, 1171 (1st Cir.1995). Count II of the complaint is dangerously close to the line drawn in *Conley* and further explained in *Rodriguez*, but appears to provide notice sufficient to survive a motion to dismiss. Although the second sentence of paragraph nine of the complaint, standing alone, might not provide the City with sufficient notice of the claim lodged against it, paragraph nine also incorporates paragraphs one through eight. Thus, paragraph nine places Count II into a particular factual context: the officers' beating of Chaabouni at the traffic intersection. In combination, then, paragraph nine's two admittedly general sentences provide sufficient notice to the City that its failure to train and supervise the two officers with respect to handling motorists during traffic congestion will be a subject of the litigation. The Court, therefore,

1. Counts I and IV cannot be brought against the City because it enjoys immunity from "any claim arising out of an intentional tort, including assault [and] battery ...." Mass.

Gen. Laws ch. 258, § 10(c). Consequently, the City's motion is directed against Counts II, III, and V only.

rejects the City's argument that, as a matter of pleading, Count II does not satisfy the notice pleading standard.

The City also contends that Mass. Gen. Laws ch. 258, § 10(c) bars the negligence claim because the claim arises out of an intentional tort. Def.'s Mem. at 2–3. Section 10(c) excludes from the group of claims no longer subject to sovereign immunity any claims arising out of an intentional tort. *See Spring v. Geriatric Auth. of Holyoke,* 394 Mass. 274, 284–86, 475 N.E.2d 727 (1985). Relying on this provision, the City argues that the negligence claim against the City grows out of intentional conduct on the part of the officers—the assault and battery—and, therefore, is barred by section 10(c). In support of this contention, the City cites *Doe v. Town of Plymouth,* 825 F.Supp. 1102 (D.Mass.1993) (Bowler, M.J.). In *Doe,* the plaintiff brought suit against a police officer and the town for which the officer served after the officer allegedly leaked information to various individuals in the town regarding the plaintiff's HIV status. *See id.* at 1104–05. In her complaint, the plaintiff alleged liability against the town under the Massachusetts Tort Claims Act "as a result of the town's 'failure to adopt adequate policies to protect the privacy rights of persons with AIDS, and its failure to adequately train and supervise [the officer] in the protection of the privacy rights of persons with AIDS.'" *Id.* at 1110–11. As in the instant case, the town argued that because the officer's conduct was intentional, the negligence claim against the town arising from the officer's intentional tort ought be barred by section 10(c). *See id.* at 1112. The court agreed, stating "the town is not directly liable under chapter 258 for 'any claim,' including a failure to train, 'arising out of an intentional tort' such as invasion of privacy." *Id.* (citing Mass. Gen. Laws ch. 258, § 10[c]). The court continued, "Plaintiff brings count V against the town rather than against the negligent, unidentified town employees involved in the alleged negligent training of [the officer]. Dismissal on a summary

judgment motion of count V, as brought under chapter 258, is therefore proper." *Id.* Although the underlying intentional torts differ, the situation in *Doe* is identical to the issue presented in this case in all relevant respects. Nonetheless, and with all due respect to Magistrate Judge Bowler, this Court disagrees with the holding in *Doe.* Numerous decisions support this Court's interpretation of section 10(c).

First and foremost, the Court looks to state court decisions for assistance in ruling on this state law question. In 1983, in *Ortiz v. County of Hampden,* 16 Mass. App.Ct. 138, 449 N.E.2d 1227 (1983), the Massachusetts Appeals Court addressed for the first time the scope of the section 10(c) exclusion when intentional acts undergird a negligence claim against a municipality. In *Ortiz,* the plaintiff brought a negligence claim against the county because its employees' negligent record keeping resulted in an erroneous arrest and imprisonment. *Id.* at 138, 449 N.E.2d 1227. The county responded by arguing that the section 10(c) exclusion barred the negligence claim because the claim arose out of the intentional acts of the officers' false arrest and imprisonment of the plaintiff. *See id.* After the Superior Court dismissed the complaint on this basis, the Appeals Court reversed.

First, the Appeals Court explained that neither legislative history nor prior case law existed in order to assist the court in interpreting the scope of the exclusion. *Id.* at 139, 449 N.E.2d 1227. Thus, the court examined sources of law relating to the Federal Tort Claims Act, 28 U.S.C. § 2680(h) (1976), and an analogous Alaskan statute, Alaska Stat. § 09.50.250 (1973). *Id.* The court observed:

> Those authorities are divided in defining the scope of actions which are excluded by statute from a waiver of sovereign immunity. The differing analyses depend, in large part, on different interpretations of what claims may be considered as "arising out of"

the torts specifically excluded by statute. Some courts have read "arising out of" in a narrow sense and have allowed actions to be brought against the government when a cause of action independent of the torts specifically enumerated by statute is alleged. Other courts have read the language of the statute broadly, thereby retaining a substantial degree of governmental immunity.

*Id.* (citations omitted). The court concluded, "[w]e are persuaded by the reasoning in the *Quinones* [*v. U.S.,* 492 F.2d 1269 (3d Cir.1974)] *case that the focus must be upon 'the type of governmental activity that might cause harm, not upon the type of harm caused.'*" Id. *at 139–40, 449 N.E.2d 1227. The court held that because the gravamen of the complaint was predicated not upon the conduct of the police but rather was directed toward the conduct of the administrators who prepared the warrant, the plaintiff had alleged negligent record keeping by county employees sufficient to avoid operation of the section 10(c) exclusion.* Id. *at 140, 449 N.E.2d 1227.*

▇ In 1988, the Supreme Judicial Court adopted the same construction of the provision that the Appeals Court first announced in *Ortiz. See Doe v. Town of Blandford,* 402 Mass. 831, 838, 525 N.E.2d 403 (1988). In *Blandford,* a former student brought suit against various municipal defendants for negligence in hiring, failing to supervise, and failing to fire a guidance counselor who subsequently committed indecent assault and battery upon the student. *Id.* at 833, 525 N.E.2d 403. The defendants relied upon section 10(c) and argued "that the wording of the plaintiff's complaint alleging negligence should not obscure the true nature of the claim, which is one arising out of an assault and battery." *Id.* at 836–37, 525 N.E.2d 403. After identifying the same split in authority recognized in *Ortiz,* the Supreme Judicial Court noted that:

Our own Appeals Court, in *Ortiz v. Hampden County,* was persuaded that the narrow interpretation was correct and allowed a suit alleging negligent record keeping to be brought after the plaintiff was imprisoned falsely. We also are persuaded that the narrow construction of the exclusion is the appropriate one. The Legislature, by excluding intentional torts from the waiver of governmental immunity, sought to insulate the government from liability for intentional conduct which it had not authorized. In this case, where the defendants allegedly had, or should have had, knowledge of [the guidance counselor's] assaultive behavior, the negligence of the defendants is the true focus of the case.

·*Id.* at 837–38, 525 N.E.2d 403. Thus, the court held that the negligence claim was not barred by section 10(c). *Id.* at 838, 525 N.E.2d 403. A number of federal courts have come to similar conclusions. *E.g., Sheehy v. Town of Plymouth,* 948 F.Supp. 119, 122–27 (D.Mass.1996) (Collings, M.J.) (rejecting town's section 10[c] defense and permitting negligence claim where plaintiff, after being illegally arrested, alleged that defendants carelessly and negligently investigated the case and misstated or failed to disclose relevant exculpatory information); *Hathaway v. Stone,* 687 F.Supp. 708, 711 (D.Mass.1988) (Caffrey, J.) (rejecting town's section 10[c] defense and permitting negligence claim where plaintiff, after his arrest and assault and battery by a police officer, alleged that the city was negligent in training, supervising, and continuing to employ the officer). At the core of these decisions is the court's recognition that the negligence claim against the city rests on wholly different grounds than the intentional torts that may immediately precipitate the dispute. The court in *Hathaway* was explicit on this point when it explained:

Here, the City is correct in arguing that it could not be sued for the alleged assault and battery committed by Stone. The City misconstrues the plaintiff's

complaint, however. Count IX alleges that the City was negligent in training, supervising, and continuing to employ Stone, which negligence resulted in the assault and battery. This claim is based on the City's own negligence, rather than Stone's intentional tort. The negligence claim against the City does not "arise out of" Stone's intentional torts, but rests on an independent negligent act by the City.

*Hathaway,* 687 F.Supp. at 711. Similarly, while Chaabouni seeks redress for the intentional torts the officers allegedly committed, his additional negligence claim against the City rests on the independent theory that the City was negligent in failing to train and supervise Officers Thomas and Buchanan.

The City's attempt to distinguish these federal cases is ineffective. The City argues that "[t]hese decisions are wholly inapposite here, however, *because the plaintiff Chaabouni does not allege that he was arrested.*" Def.'s Mem. at 3–4. "Whether a plaintiff was arrested, the City contends, is a legally significant fact with respect to the plaintiff's anticipated argument that his claim circumvents the § 10(c) bar." *Id.* at 4. Such a distinction is not, however, nor should it be, relevant to the section 10(c) inquiry. Police officers have many encounters with citizens which do not rise to the level of an arrest, but during which injury could nonetheless occur as a result of the negligent failure to train or supervise such officers. Under the City's theory, plaintiffs suffering injuries during, for instance, a *Terry* stop, where such injuries could be said to result from the training or supervisory negligence of other city employees, would be barred from bringing a negligence claim against the city although such claim would not be barred if such injuries occurred during the course of making an arrest. Under both scenarios, the City's underlying negligence and the harm to the plaintiff would essentially be the same and, therefore, ought be treated the same. As a result, the Court rejects

the distinction pressed by the City relating to whether there is an arrest. Consequently, the Court applies the state courts' interpretation of section 10(c) and rejects the City's motion to dismiss the negligence claim on that basis.

The City makes one more attempt to persuade the Court to dismiss Count II. The City states that "the claim is also precluded because an 'assault and battery' that is not related to a legitimate employment function—i.e., not connected to an arrest—is clearly outside the scope of employment and therefore not compensable under M.G.L. c. 258." *Id.* at 4–5 (citing *Canty v. Old Rochester Regional Sch. Dist.,* 54 F.Supp.2d 66, 71 & n. 6 [D. Mass.1999]). The plaintiff's allegation against the school district in *Canty* and Chaabouni's allegation against the City have an important difference, however. In *Canty,* this Court dismissed the claim of negligence against Old Rochester that was premised on the negligent misconduct of an athletic coach because it could not reasonably be shown that such sexual misconduct was performed within the scope of his employment as required under the Act. *See Canty,* 54 F.Supp.2d at 71. Here, however, Chaabouni's negligence claim does not rely on the conduct of the officers as directly giving rise to the claim against the City. Instead, Chaabouni points to the as yet unidentified City employees (presumably superior police officers) who failed to train and supervise Officers Buchanan and Thomas. It can reasonably be inferred that those superior officers entrusted with the training and supervision of Officers Buchanan and Thomas were acting within the scope of their employment when they allegedly failed to train and supervise these two officers. Thus, liability of the City on this count attaches only through the negligence of these superior officers and not through the conduct of Officers Buchanan and Thomas. *Canty,* therefore, is inapposite and the Court rejects this final argument and denies the City's motion to dismiss the negligence claim directed toward it.

### B. Count III: Intentional Infliction of Emotional Distress

■ Count III asserts a claim for intentional infliction of emotional distress against the City as well as the officers. In particular, Count III alleges that the defendants "intentionally inflicted emotional distress upon him by assaulting, battering, threatening and intimidating him." Compl. ¶ 10. Unlike Count II's claim of negligence, section 10(c) bars Count III at least insofar as it is directed toward the City. Section 10(c) specifically excludes "any claim arising out of an intentional tort, including ... intentional mental distress ...." Mass. Gen. Laws ch. 258, § 10(c). As is clear from the language in the complaint, Chaabouni's intentional infliction of emotional distress claim is predicated on the intentional conduct of the officers. As a result, the Court from the bench dismissed this claim against the City pursuant to section 10(c) of the Act. *See Mellinger v. Town of W. Springfield*, 401 Mass. 188, 196, 515 N.E.2d 584 (1987) (affirming dismissal of intentional infliction of emotional distress claim against town pursuant to section 10[c]).

### C. Count V: Civil Rights Violations

Count V reads, in its entirety: "The Plaintiff incorporates by reference paragraphs one (1) through eleven (11) and the Plaintiff further states that the Defendants violated his rights under the constitution of the Commonwealth of Massachusetts and the constitution of the United States of America." Compl. ¶ 12. The City does not argue—and rightly so—that Chaabouni's allegations of physical abuse by the officers do not constitute a violation of his bodily integrity sufficient to warrant a constitutional claim. Instead, the City attacks Chaabouni's federal and state civil rights claims on other grounds.

#### 1. 42 U.S.C. § 1983

■ Under section 1983, no liability can attach to a local government entity based on the theory of respondeat superi-

or. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Chaabouni's section 1983 claim against the City, therefore, cannot be maintained if it relies merely upon the acts of the officers and fails to allege a custom or policy causally related to the officers' conduct. Instead, local government liability under section 1983 depends upon a finding that the alleged injury stems from an official policy or custom that runs afoul of the Constitution. *Id.* at 690–91, 98 S.Ct. 2018. Simply put, after examining every allegation in the complaint, it is clear that Chaabouni fails to allege (1) a policy or custom of the City of Boston that is (2) causally related to his injury. As these two elements are essential to a properly pled section 1983 claim and both are missing (though either deficiency would do), this aspect of Chaabouni's claim must be dismissed.

■ While the preceding is sufficient, further analysis bolsters this conclusion. Elsewhere in the complaint, Chaabouni hinges the City's liability on its failure to train the officers. Compl. ¶ 9. With respect to a failure to train allegation in the context of section 1983, the courts have explained:

> Only if the failure to train "amounts to deliberate indifference to the rights of persons with whom the police come into contact," and is "closely related" to, or "the moving force" behind, the constitutional injury, can the claim against the municipality prevail. For this "deliberate or conscious choice" to have been established, plaintiffs needed to present evidence that (1) the Town knew when it hired Grayson that the risk of future equal protection violations arising and recurring in domestic child sexual abuse cases was "so obvious" that its failure to train him therein likely would result in continued violations; or (2) even though the initial risk of recurring constitutional violations was not "so obvious," the Town subsequently learned of a serious

recurrence, yet took no action to provide the necessary training.

*Hayden v. Grayson,* 134 F.3d 449, 456 (1st Cir.1998) (quoting *City of Canton v. Harris,* 489 U.S. 378, 388–89, 390 n. 10, 391, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). If Chaabouni's section 1983 claim does, indeed, rest on the City's failure to train Officers Buchanan and Thomas, then he must allege either that (1) the City knew when it hired the officers that the risk of future constitutional violations due to the use of excessive force was "so obvious" that its failure to train him would likely result in continued violations or (2) the City subsequently learned of a serious incident, yet took no action to provide the necessary training. *Id.* If a plaintiff does not allege either of these underlying factual grounds in a failure to train case against a municipality, then he has not alleged deliberate indifference on the part of the municipality. Without an allegation of deliberate indifference, a claim against a municipality is without foundation. *See City of Canton,* 489 U.S. at 388–89, 109 S.Ct. 1197.[2]

The First Circuit's holding in *Meehan v. Town of Plymouth,* 167 F.3d 85, 92 (1st Cir.1999), is instructive. In *Meehan,* the plaintiff brought malicious prosecution claims against Plymouth and three of its police officers after his conviction for trafficking cocaine was overturned due to insufficiency of the evidence. *Id.* at 86. Among the claims dismissed by Judge Woodlock was the plaintiff's section 1983 claim against the town arising from his prosecution. *Id.* at 87. After the plaintiff appealed, the First Circuit concluded:

> Meehan claims that the Town was liable for its officers' actions under 42 U.S.C. § 1983 because it had failed to properly train and supervise them. As the Supreme Court has stated, however, "inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." .... Because the complaint fails to allege that the failure to train was deliberate, or that it was directly and causally linked to the alleged violation of Meehan's civil rights, the claim was properly dismissed.

*Id.* at 92 (citation omitted). As explained above, Chaabouni's complaint suffers from the same deficiencies. Therefore, his section 1983 claim against the City ought be, and hereby is, dismissed.

### 2. Mass. Gen. Laws ch. 12, §§ 11H, 11I

The Massachusetts Civil Rights Act ("MCRA") provides that any person who interferes, or attempts to interfere, with another's exercise or enjoyment of rights secured by the constitution or laws of the United States or the Commonwealth may be liable. Mass. Gen. Laws ch. 12, § 11I. Such interference or attempted interference must, however, be made by threats, intimidation, or coercion. *Id.* § 11H; *Matthews v. Rakiey,* 38 Mass.App.Ct. 490, 492 n. 5, 649 N.E.2d 770 (1995). The Supreme Judicial Court has held that the "essential element" of an MCRA violation is threat, intimidation, or coercion. *Layne v. Superintendent, Mass. Correctional Inst.,* 406 Mass. 156, 158, 546 N.E.2d 166 (1989). The purpose of the MCRA was to provide a state remedy for deprivation of civil rights extending beyond the limits of federal law by incorporating private action within its bounds. *Batchelder v. Allied Stores Corp.,* 393 Mass. 819, 821, 473 N.E.2d 1128 (1985). Thus, the Legislature intended to provide a remedy under state law coextensive with the federal remedy except that the federal statute requires

---

**2.** In addition, *"City of Canton* requires not only deliberate indifference but that the alleged failure to train be shown to have been the 'closely related' cause of the constitutional injury." *Hayden,* 134 F.3d at 457 n. 14. Chaabouni's pleading fails in this regard as well. He presents no underlying factual allegations which, if believed, would warrant a factfinder in determining that the failure to train caused his injury.

state action whereas the MCRA does not. *See id.*

The City contends that dismissal of the MCRA claim is compelled because "[t]he Supreme Judicial Court has stated ... that the Civil Rights Act and Section 1983 are parallel statutes, coextensive with each other." Def.'s Mem. at 8 (quoting *Canney v. City of Chelsea*, 925 F.Supp. 58, 68 [D. Mass.1996]) (citations omitted). The City therefore asserts that, because the section 1983 claim must be dismissed, the MCRA claim must also be dismissed. *Id.* This syllogistic theory, although facially appealing, is fundamentally flawed.

First, any syllogism is only as strong as its underlying premise. Here, the premise that section 1983 and the MCRA are so parallel that they should be treated identically may be a fair statement generally, but it does little to answer specific matters of dispute in this case. One need not look too far in order to identify significant differences between the statutes. For example, the MCRA reaches private actors while section 1983 does not, and an MCRA plaintiff must allege threats, intimidation, or coercion while a section 1983 plaintiff need not.

The potential difference most relevant to the City's argument here concerns the means by which liability attaches to a municipal entity. Under section 1983, no liability can attach to a local government entity based on the theory of respondeat superior. *Monell,* 436 U.S. at 691, 98 S.Ct. 2018. Thus, local government liability under section 1983 depends upon a finding that the alleged injury stems from an official policy or custom that runs afoul of the Constitution. *Id.* at 690–91, 98 S.Ct. 2018. Until recently, courts interpreting MCRA came to a similar conclusion. *E.g., Lyons v. Nat'l Car Rental Sys., Inc.*, 30 F.3d 240, 245 (1st Cir.1994) (interpreting MCRA to prohibit theory of respondeat superior); *Vicarelli v. Bus. Int'l, Inc.*, 973 F.Supp. 241, 247 (D.Mass.1997) (Lindsay, J.) (following *Lyons* ); *Armstrong v. Lamy,* 938 F.Supp. 1018, 1042 (D.Mass.

1996) (Keeton, J.) (same). In *Lyons,* the First Circuit noted that no Massachusetts state court had addressed whether an employer could be held liable under the MCRA for the actions of its employee. *Lyons,* 30 F.3d at 245. Indeed, the Supreme Judicial Court has repeatedly declined to decide the issue. *E.g., Rodriques v. Furtado,* 410 Mass. 878, 889 n. 14, 575 N.E.2d 1124 (1991); *O'Connell v. Chasdi,* 400 Mass. 686, 694, 511 N.E.2d 349 (1987). Thus, in the absence of any guidance from the state courts, the First Circuit determined that the doctrine of respondeat superior had no place in MCRA claims. *See Lyons,* 30 F.3d at 245.

Subsequent to the First Circuit's ruling, however, the Massachusetts Appeals Court addressed the issue. In *Sarvis v. Boston Safe Deposit & Trust Co.,* 47 Mass.App.Ct. 86, 94–97, 711 N.E.2d 911 (1999), the Appeals Court rejected the analysis in *Lyons* and held that a private employer could be vicariously liable under the MCRA for civil rights violations committed by an employee while acting within the scope of his employment. The court began its analysis by emphasizing that its "primary function in interpreting any statute is to ascertain the intent of the Legislature, as evidenced by the language used, and considering the purposes and remedies intended to be advanced." *Id.* at 95, 711 N.E.2d 911 (internal quotation marks omitted). The court reiterated *Batchelder*'s findings regarding the purposes of the MCRA. *See id.* The court then explained that:

> The MCRA forbids "any person or persons" from interfering by threats, intimidation, or coercion with another's enjoyment of his or her civil rights.... The Legislature has directed that "[i]n construing statutes ... unless a contrary intention clearly appears ... [the word] '[p]erson' ... shall include corporations, societies, associations and partnerships."

*Id.* (quoting Mass. Gen. Laws ch. 4, § 7, para. 23). The court added that "[t]here is nothing in the MCRA to indicate clearly that the Legislature did not intend the term 'person' to take on the statutory definition appearing in G.L. c. 4, § 7, Twenty-third." *Id.* at 96, 711 N.E.2d 911. Consequently, a corporation is a "person," as that word is used in the MCRA. *See id.* The Appeals Court then turned to the significant body of law setting forth a corporation's vicarious liability for the acts of its agents. *See id.* at 96–97, 711 N.E.2d 911. The court continued, "[w]e think it doubtful that the Legislature would have intended to create a unique exception to the tort principle of respondeat superior for a statute enacted as a necessity to remedy the violation of civil rights by private persons." *Id.* at 97, 711 N.E.2d 911. The court concluded, "the Legislature intended corporations to be vicariously liable under the MCRA for civil rights violations committed by their agents acting in the scope of their employment." *Id.*

Thus, the Appeals Court decision in *Sarvis* squarely rejected the First Circuit's holding in *Lyons* and, therefore, suggests that Chaabouni may rely on vicarious liability in order to state his MCRA claim. A footnote dropped in *Sarvis* places in doubt the decision's applicability to an MCRA claim levied against a municipal actor, however. *See id.* at 96 n. 10, 711 N.E.2d 911. During the course of its determination that a corporation is a "person" under the statute, the court added in footnote 10 that:

> "[I]t is a widely accepted rule of statutory construction that general words in a statute such as 'persons' will not ordinarily be construed to include the State or political subdivisions thereof.' " *Hansen v. Commonwealth*, 344 Mass. 214, 219, 181 N.E.2d 843 (1962). *See Fran's Lunch, Inc. v. Alcoholic Beverages Control Comm'n*, 45 Mass.App.Ct. 663, 664, 700 N.E.2d 843 (1998).

*Id.*, cited with approval in *Brimage v. City of Boston*, No. Civ. A. 97–1912, 2001 WL 69488, at *5 (Mass.Super.Ct. Jan. 24, 2001) ("[T]he definition of 'person' does not include the City of Boston."). This Court's determination of the meaning of this dicta largely governs its ruling as to the City's motion to dismiss the MCRA claim. In a sense, one might wonder whether the Appeals Court is tipping its hand on this issue. One could fairly read this footnote as indicating that while "corporations" may be considered "persons" under the statute, the State and political subdivisions thereof stand on vastly different ground and, therefore, do not constitute "persons" within the meaning of the MCRA. On the other hand, one could read the footnote as merely an admonishment that one ought not assume municipal liability by respondeat superior in light of the court's holding with respect to private employers in *Sarvis*.

In one sense, a private employer and a municipality share some relevant characteristics. As the Appeals Court noted in determining that private employers ought be liable for their agents' MCRA violations, "[a] corporation is a creature of the law, a 'separate and distinct legal entity . . . [that] can only act through its agents.' . . . . Its liability is 'necessarily vicarious.' " *Id.* at 96, 711 N.E.2d 911. Likewise, a municipality is also a "creature of the law" and, in a practical sense, cannot act without the assistance of agents. Yet despite these similarities, the history of liability for corporate entities differs dramatically from that of municipalities. Corporations have historically been held responsible for the acts of their agents while acting within the scope of their employment. Municipalities, however, have enjoyed the ancient protection of sovereign immunity and, pursuant thereto, have avoided liability for all conduct that might be attributed to them. The modern explanation for the discrepancy is simple. Courts were concerned about bankrupting the state due to a potentially infinite number of claims against the state for harms arising from the myriad actions performed by agents of the state. Corporations, meanwhile, were per-

ceived as more capable of absorbing these additional operating costs by passing them on incrementally to each consumer. These were the common law rules anent liability for these two types of entities.

■■■■ As matter of statutory construction, courts do not lightly put aside common law principles without an indication of such intent on the part of the legislative body enacting a statute. This principle of statutory construction is apparent in the Appeals Court's treatment of the MCRA in *Sarvis* where the court explained: "We think it doubtful that the Legislature would have intended to create a unique exception to the tort principle of respondeat superior for a statute enacted as a necessity to remedy the violation of civil rights by private persons." *Id.* at 97, 711 N.E.2d 911. Likewise, sovereign immunity illuminates the page upon which the MCRA was written and, to the extent that the Massachusetts legislature intended to waive that immunity in order to expand the liability of municipalities, it might be expected to have done so explicitly. In addition, with respect to the legislative history of the MCRA, it is clear that the statute was directed toward expanding liability to private actors who commit civil rights violations. *Batchelder*, 393 Mass. at 821, 473 N.E.2d 1128. By focusing on reaching private actors, the legislative history suggests an absence of intent to alter the status quo of civil rights claims against state actors. Recall that the status quo at the time of the statute's passage (1979) included the Supreme Court's *Monell* decision (1978), which prohibited claims of municipal liability on the theory of respondeat superior under section 1983. Thus, while the Massachusetts legislature may have viewed liability toward corporations in one light, *see Sarvis*, 47 Mass.App.Ct. at 97, 711 N.E.2d 911, it likely did not intend, by expanding liability to private actors, to impose the theory of respondeat superior on municipalities as well. This Court, therefore, rules that the MCRA does not permit holding a municipality liable under the theory of vicarious liability. Although it is difficult to discern the details of Chaabouni's claim from the general assertion contained in paragraph twelve of the complaint, it appears that he attempts to impute the conduct of the officers to the City in order to make out his MCRA claim as against the City. Because the Court has rejected such a theory under the MCRA, it grants the City's motion to dismiss Chaabouni's MCRA claim.[3]

## IV. CONCLUSION

In summary, the Court GRANTS the motion [Docket no. 4] in part and DENIES it in part. As to the negligence claim (Count II), the Court denies the motion to dismiss because the negligence claim does not "arise out of" an intentional

---

3. The City also contends that Chaabouni fails to allege that the defendants interfered with his civil rights by threats, intimidation, or coercion, as is required under the MCRA. As the Appeals Court has summarized:

> Under the MCRA, a " '[t]hreat' ... involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm. 'Intimidation' involves putting in fear for the purpose of compelling or deterring conduct.... [C]oercion ... [is] 'the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done.' "

*Sarvis*, 47 Mass.App.Ct. at 91–92, 711 N.E.2d 911 (quoting *Planned Parenthood League v. Blake*, 417 Mass. 467, 474, 631 N.E.2d 985 [1994] ). Although there is no specific allegation that uses these magic words, the factual allegations that the officers pulled Chaabouni out of his cab and indiscriminately beat him at least qualify as coercion. *See, e.g., Planned Parenthood*, 417 Mass. at 467, 474, 631 N.E.2d 985 ("[Coercion involves] the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done."); *Delaney v. Chief of Police of Wareham*, 27 Mass.App.Ct. 398, 409, 539 N.E.2d 65 (1989) (defining "coercion" as "the active domination of another's will"). The Court, therefore, rejects the City's argument that Chaabouni has failed to allege threats, intimidation, or coercion. This ruling underscores the importance of the Court's determination that the MCRA does not permit vicarious liability claims against municipalities.

tort. As to the intentional infliction of emotional distress claim (Count III), the Court grants the motion to dismiss because the claim is an intentional tort that is excluded from the Massachusetts Tort Claims Act's waiver of sovereign immunity. Finally, as to the constitutional claims (Count V), the Court dismisses (1) the section 1983 claim because it fails to identify any municipal custom or policy that is causally related to Chaabouni's injury and (2) the MCRA claim because the statute does not permit municipal liability under the doctrine of respondeat superior.